## DAVIS *v.* UNITED STATES

No. 71–6481. Argued February 20, 1973—Decided April 17, 1973

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, and POWELL, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which DOUGLAS and BRENNAN, JJ., joined, *post,* p. 245.

*Melvin L. Wulf* argued the cause and filed briefs for petitioner.

*Edward R. Korman* argued the cause for the United States. With him on the brief were *Solicitor General*

*Griswold, Assistant Attorney General Petersen,* and *Sidney M. Glazer.\**

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

We are called upon to determine the effect of Rule 12 (b)(2) of the Federal Rules of Criminal Procedure on a post-conviction motion for relief which raises for the first time a claim of unconstitutional discrimination in the composition of a grand jury. An indictment was returned in the District Court charging petitioner Davis, a Negro, and two white men with entry into a federally insured bank with intent to commit larceny in violation of 18 U. S. C. §§ 2 and 2113 (a). Represented by appointed counsel,[1] petitioner entered a not-guilty plea at his arraignment and was given 30 days within which to file pretrial motions. He timely moved to quash his indictment on the ground that it was the result of an illegal arrest, but made no other pretrial motions relating to the indictment.

On the opening day of the trial, following *voir dire* of the jury, the District Judge ruled on petitioner's pretrial motions in chambers and ordered that the motion to quash on the illegal arrest ground be carried with the case. He then asked twice if there were anything else before commencing trial. Petitioner was convicted and

---

*\*Jack Greenberg, James M. Nabrit III,* and *Charles Stephen Ralston* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., as *amicus curiae* urging reversal.

[1] Petitioner was represented throughout the trial by competent, court-appointed counsel, whose advocacy prompted the Court of Appeals to compliment him saying:

"We have rarely witnessed a more thorough or more unstinted expenditure of effort by able counsel on behalf of a client." 409 F. 2d 1095, 1101 (CA5 1969).

sentenced to 14 years' imprisonment. His conviction was affirmed on appeal. 409 F. 2d 1095 (CA5 1969).

Post-conviction motions were thereafter filed and denied, but none dealt with the issue presented in this case. Almost three years after his conviction, petitioner filed the instant motion to dismiss the indictment, pursuant to 28 U. S. C. § 2255, alleging that the District Court had acquiesced in the systematic exclusion of qualified Negro jurymen by reason of the use of a "key man" system of selection,[2] an asserted violation of the "mandatory requirement of the statute laws set forth . . . in title 28, U. S. C. A. Section 1861, 1863, 1864, and the 5th amendment of the United States Constitution."[3] His challenge only went to the composition of the grand jury and did not include the petit jury which found him guilty. The District Court, though it took no evidence on the motion, invited additional briefs on the issue of waiver. It then denied the motion. In its memorandum opinion it relied on *Shotwell Mfg. Co.* v. *United States,* 371 U. S. 341 (1963), and concluded that petitioner had waived his right to object to the composition of the grand jury because such a contention is waived under Rule 12 (b)(2) unless raised by motion prior to trial. Also, since the "key man" method of selecting grand jurors had been openly followed for many years prior to petitioner's indictment; since the same grand jury that indicted petitioner indicted his two white accomplices; and since the

---

[2] The use of the "key man" system was approved in *Scales* v. *United States,* 367 U. S. 203, 259 (1961), affirming 260 F. 2d 21, 44–46 (CA4 1958). The adoption of the Jury Selection and Service Act of 1968, 28 U. S. C. §§ 1861–1869, has precluded its further use.

[3] Petitioner also alleged that a timely oral motion in open court prior to trial was made preserving for him the right to contest the grand jury array, and that a law student who was researching the grand jury array was stopped from seeing him.

case against petitioner was "a strong one," the court determined that there was nothing in the facts of the case or in the nature of the claim justifying the exercise of the power to grant relief under Rule 12 (b)(2) for "cause shown."

The Court of Appeals affirmed on the basis of *Shotwell, supra,* and Rule 12 (b)(2). Because its decision is contrary to decisions of the Ninth Circuit in *Fernandez* v. *Meier,* 408 F. 2d 974 (1969), and *Chee* v. *United States,* 449 F. 2d 747 (1971), we granted certiorari to resolve the conflict.

Petitioner contends that because his § 2255 motion alleged deprivation of a fundamental constitutional right, one which has been recognized since *Strauder* v. *West Virginia,* 100 U. S. 303 (1880), his case is controlled by this Court's dispositions of *Kaufman* v. *United States,* 394 U. S. 217 (1969), and *Sanders* v. *United States,* 373 U. S. 1 (1963), rather than *Shotwell Mfg. Co.* v. *United States, supra,* and Rule 12 (b)(2). Accordingly, he urges that his collateral attack on his conviction may be precluded only after a hearing in which it is established that he "deliberately bypassed" or "understandingly and knowingly" waived his claim of unconstitutional grand jury composition. See *Fay* v. *Noia,* 372 U. S. 391 (1963), and *Johnson* v. *Zerbst,* 304 U. S. 458 (1938).

I

Rule 12 (b)(2) provides in pertinent part that "[d]efenses and objections based on defects in the institution of the prosecution or in the indictment . . . may be raised only by motion before trial," and that failure to present such defenses or objections "constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver." By its terms, it applies to both procedural and constitutional defects in the institution of prosecutions which do not affect the jurisdiction of the

trial court. According to the Notes of the Advisory Committee on Rules, the waiver provision was designed to continue existing law, which as exemplified by this Court's decision in *United States* v. *Gale,* 109 U. S. 65 (1883), was, *inter alia,* that defendants who pleaded to an indictment and went to trial without making any non-jurisdictional objection to the grand jury, even one unconstitutionally composed, waived any right of subsequent complaint on account thereof. Not surprisingly, therefore, the Advisory Committee's Notes expressly indicate that claims such as petitioner's are meant to be within the Rule's purview:

> "These two paragraphs [12 (b)(1) and (2)] classify into two groups all objections and defenses to be interposed by motion prescribed by Rule 12 (a). In one group are defenses and objections which must be raised by motion, failure to do so constituting a waiver. . . .
>
> ". . . Among the defenses and objections in this group are the following: Illegal selection or organization of the grand jury . . . ." Notes of Advisory Committee following Fed. Rule Crim. Proc. 12, 18 U. S. C. App.

This Court had occasion to consider the Rule's application in *Shotwell Mfg. Co.* v. *United States, supra,* a case involving tax-evasion convictions. In a motion filed more than four years after their trial, but before the conclusion of direct review, petitioners alleged that both the grand and petit jury arrays were illegally constituted because, *inter alia,* "the Clerk of the District Court failed to employ a selection method designed to secure a cross-section of the population." [4] 371 U. S., at 361–362.

---

[4] Petitioner attempts to distinguish *Shotwell* on the ground that the case "involved legal irregularities which did not rise to the

Deeming the case controlled by Rule 12 (b)(2), the District Court held a hearing to determine whether there was "cause" warranting relief from the waiver provision and it found that "the facts concerning the selection of the grand and petit juries were notorious and available to petitioners in the exercise of due diligence before the trial." *Id.*, at 363. It concluded that their failure to exercise due diligence combined with the absence of prejudice from the alleged illegalities precluded the raising of the issue, and the Court of Appeals affirmed. In this Court, petitioners conceded that Rule 12 (b)(2) applied to their objection to the grand jury array, but they denied that it applied to the petit jury. Both objections were held foreclosed by the petitioners' years of inaction, and the lower courts' application of the Rule was affirmed.

*Shotwell* thus confirms that Rule 12 (b)(2) precludes untimely challenges to grand jury arrays, even when such challenges are on constitutional grounds.[5] Despite the strong analogy between the effect of the Rule as construed in *Shotwell* and petitioner's § 2255 allegations, he nonetheless contends that *Kaufman* v. *United States, supra,* establishes that he is not precluded from raising

---

dimension of the fundamental constitutional right asserted" herein. (Brief for Petitioner 18.) At 362–363 of the Court's opinion in *Shotwell,* however, the majority accepted petitioners' assertion of constitutional deprivation at face value before rejecting their claims on the basis of Rule 12 (b)(2).

[5] We are comforted in this conclusion by the concurrence of all but one of the courts of appeals that have considered the issue. See *Moore* v. *United States,* 432 F. 2d 730, 740 (CA3 1970) (*en banc*); *Juelich* v. *Harris,* 425 F. 2d 814 (CA7 1970); *United States* v. *Williams,* 421 F. 2d 529, 532 (CA8 1970); *Bustillo* v. *United States,* 421 F. 2d 131 (CA5 1970); and *Poliafico* v. *United States,* 237 F. 2d 97 (CA6 1956). Contra, *Fernandez* v. *Meier,* 408 F. 2d 974 (CA9 1969).

his constitutional challenge in a § 2255 proceeding.[6] See
*Fay* v. *Noia, supra.* We disagree.

In *Kaufman,* the defendant in a bank robbery con-
viction sought collateral relief under § 2255 alleging that
illegally seized evidence had been admitted against him
at trial, over a timely objection, and that this evidence
resulted in the rejection of his only defense to the charge.
The application was denied in both the District Court
and the Court of Appeals on the ground that it had not
been raised on appeal from the judgment of conviction
and "that a motion under § 2255 cannot be used in lieu
of an appeal." 394 U. S., at 223. This Court reversed,
however, holding that when constitutional claims are
asserted, post-conviction relief cannot be denied solely
on the ground that relief should have been sought by
appeal. *Ibid.*

But the Court in *Kaufman* was not dealing with the
sort of express waiver provision contained in Rule 12 (b)
(2) which specifically provides for the waiver of a par-

---

[6] Petitioner relies on the reasoning of *Fernandez, supra,* in arguing
that a different waiver rule should apply in § 2255 proceedings. In
that case, the defendant argued that the exclusion of Spanish Amer-
icans from his grand and petit juries constituted a deprivation of con-
stitutional right. The claim was untimely raised and the Court of
Appeals conceded that failure to present it as provided in Rule
12 (b)(2) resulted in a waiver. Relying, however, on this Court's
decisions in *Fay* v. *Noia,* 372 U. S. 391 (1963), and *Sanders* v. *United
States,* 373 U. S. 1 (1963), that court held that collateral relief
could be denied under § 2255 only upon a showing of a "knowing
and deliberate by-pass" of a timely objection. Petitioner concedes
that the court misread *Sanders, supra,* but he argues that it applied
the correct waiver rule. Although we find it difficult to conceptualize
the application of one waiver rule for purposes of federal appeal and
another for purposes of federal habeas corpus, we will nonetheless give
consideration to petitioner's claim that the cases interpreting the
federal habeas corpus statute set the applicable standard.

ticular kind of constitutional claim if it be not timely asserted. The claim in *Kaufman* was that the applicable provisions of § 2255 by implication forbade the assertion of a constitutional claim of unlawful search and seizure where the defendant failed to assert the claim on appeal from the judgment of conviction.[7] See, *e. g., Sunal* v. *Large,* 332 U. S. 174, 179 (1947). The Court held that the statute did not preclude the granting of relief on such a claim simply because it had not been asserted on appeal, where there was no indication of a knowing and deliberate bypass of the appeal procedure. But here the Government's claim is not that § 2255 itself limits or precludes the assertion of petitioner's claim, but that the separate provisions of Rule 12 (b)(2) do so. *Kaufman,* therefore, is dispositive only if the absence of a statutory provision for waiver in § 2255 and the federal habeas statute by implication precludes the application to post-conviction proceedings of the express waiver provision found in the Federal Rules of Criminal Procedure.

*Shotwell* held that a claim of unconstitutional grand jury composition raised four years after conviction, but while the appeal proceedings were still alive, was governed by Rule 12 (b)(2). Both the reasons for the Rule and the normal rules of statutory construction clearly indicate that no more lenient standard of waiver should

---

[7] The Court in *Kaufman* made reference to the possibility of the denial of § 2255 relief as a result of a deliberate bypass of the suppression procedures established in Fed. Rule Crim. Proc. 41 (e). *Kaufman* v. *United States,* 394 U. S. 217, 227 n. 8 (1969). But it had no occasion to consider that Rule's effects on § 2255 motions since there "[a]ppointed counsel had objected at trial to the admission of certain evidence on grounds of unlawful search and seizure," *id.,* at 220 n. 3, and the District Court's rationale for denying relief was that "this matter was not assigned as error on Kaufman's appeal from conviction and is not available as a ground for collateral attack . . . ." See *id.,* at 219.

apply to a claim raised three years after conviction simply because the claim is asserted by way of collateral attack rather than in the criminal proceeding itself.

The waiver provisions of Rule 12 (b)(2) are operative only with respect to claims of defects in the institution of criminal proceedings. If its time limits are followed, inquiry into an alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of a trial. If defendants were allowed to flout its time limitations, on the other hand, there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment prior to trial. Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult.

Rule 12 (b)(2) promulgated by this Court and, pursuant to 18 U. S. C. § 3771, "adopted" by Congress, governs by its terms the manner in which the claims of defects in the institution of criminal proceedings may be waived. See *Singer* v. *United States,* 380 U. S. 24, 37 (1965). Were we confronted with an express conflict between the Rule and a prior statute, the force of § 3771, providing that "[a]ll laws in conflict with such rules shall be of no further force or effect," is such that the prior inconsistent statute would be deemed to have been repealed. Cf. *Sibbach* v. *Wilson & Co.,* 312 U. S. 1, 10 (1941). The Federal Rules of Criminal Procedure do not *ex proprio vigore* govern post-conviction proceedings, and had Congress in enacting the statutes governing federal collateral relief specifically there dealt with the issue of waiver, we would be faced with a difficult question of repeal by implication of such a provision by the later

enacted rules of criminal procedure. But Congress did not deal with the question of waiver in the federal collateral relief statutes, and in *Kaufman* this Court held that, since § 2255 had not spoken on the subject of waiver with respect to claims of unlawful search and seizure, a particular doctrine of waiver would be applied by this Court in interpreting the statute.

We think it inconceivable that Congress, having in the criminal proceeding foreclosed the raising of a claim such as this after the commencement of trial in the absence of a showing of "cause" for relief from waiver, nonetheless intended to perversely negate the Rule's purpose by permitting an entirely different but much more liberal requirement of waiver in federal habeas proceedings. We believe that the necessary effect of the congressional adoption of Rule 12 (b)(2) is to provide that a claim once waived pursuant to that Rule may not later be resurrected, either in the criminal proceedings or in federal habeas, in the absence of the showing of "cause" which that Rule requires. We therefore hold that the waiver standard expressed in Rule 12 (b)(2) governs an untimely claim of grand jury discrimination, not only during the criminal proceeding, but also later on collateral review.

Our conclusion in this regard is further buttressed by the Court's observation in *Parker* v. *North Carolina*, 397 U. S. 790, 798 (1970), decided the year after *Kaufman*, that "[w]hether the question of racial exclusion in the selection of the grand jury is open in a federal habeas corpus action we need not decide." The context of the Court's language makes it apparent that the question was framed in terms of waiver and timely assertion of such a claim in state criminal proceedings. But if the question were left open with respect to state proceedings, it must have been at least patently open with respect to

federal habeas review of federal convictions, where Congress is the lawgiver both as to the procedural rules governing the criminal trial and the principles governing collateral review.

## II

The principles of Rule 12 (b) (2), as construed in *Shotwell,* are not difficult to apply to the facts of this case. Petitioner alleged the deprivation of a substantial constitutional right, recognized by this Court as applicable to state criminal proceedings from *Bush* v. *Kentucky,* 107 U. S. 110 (1883), through *Alexander* v. *Louisiana,* 405 U. S. 625 (1972). But he failed to assert the claim until long after his trial, verdict, sentence, and appeal had run their course. In findings challenged only halfheartedly here, the District Court determined that no motion, oral or otherwise, raised the issue of discrimination in the selection of the grand jurors prior to trial. The Court of Appeals affirmed, and on petition for rehearing conducted its own search of the record in a vain effort to see whether the files or docket entries in the case supported petitioner's contention that he had made such a motion. We will not disturb the coordinate findings of these two courts on a question such as this.

The waiver provision of the Rule therefore coming into play, the District Court held that there had been no "cause shown" which would justify relief. It said:

> "Petitioner offers no plausible explanation of his failure to timely make his objection to the composition of the grand jury. The method of selecting grand jurors then in use was the same system employed by this court for years. No reason has been suggested why petitioner or his attorney could not have ascertained all of the facts necessary to present the objection to the court prior to trial. The same

grand jury that indicted petitioner also indicted his two white accomplices. The case had no racial overtones. The government's case against petitioner was, although largely circumstantial, a strong one. There was certainly sufficient evidence against petitioner to justify a grand jury in determining that he should stand trial for the offense with which he was charged. . . . Petitioner has shown no cause why the court should grant him relief from his waiver of the objection to the composition of the grand jury . . . ."

In denying the relief, the court took into consideration the question of prejudice to petitioner. This approach was approved in *Shotwell* where the Court stated:

"[W]here, as here, objection to the jury selection has not been timely raised under Rule 12 (b)(2), it is entirely proper to take absence of prejudice into account in determining whether a sufficient showing has been made to warrant relief from the effect of that Rule." 371 U. S., at 363.

Petitioner seeks to avoid this aspect of *Shotwell* by asserting that there both lower courts had found that petitioners were not prejudiced in any way by the alleged illegalities whereas under *Peters* v. *Kiff,* 407 U. S. 493 (1972), prejudice is presumed in cases where there is an allegation of racial discrimination in grand jury composition. But *Peters* dealt with whether or not a white man had a substantive constitutional right to set aside his conviction upon proof that Negroes had been systematically excluded from the state grand and petit juries which indicted and tried him. Three Justices dissented from the Court's upholding of such a substantive right on the ground that no prejudice had been shown, and three concurred separately in the

judgment. But the three opinions delivered in *Peters, supra,* all indicate a focus on the existence of the constitutional right, rather than its possible loss through delay in asserting it. The presumption of prejudice which supports the existence of the right is not inconsistent with a holding that actual prejudice must be shown in order to obtain relief from a statutorily provided waiver for failure to assert it in a timely manner.

We hold that the District Court did not abuse its discretion in denying petitioner relief from the application of the waiver provision of Rule 12 (b)(2), and that having concluded he was not entitled to such relief, it properly dismissed his motion under § 2255. Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE MARSHALL, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN join, dissenting.

The opinion of the Court obscures the only sensible argument for the result the majority reaches. I am not persuaded by that argument, and find the majority opinion clearly defective. I believe that Rule 12 (b)(2), properly interpreted in the light of the purposes it serves and the purposes served by making available collateral relief from criminal convictions, does not bar a prisoner from claiming that the grand jury that indicted him was unconstitutionally composed, if he shows that his failure to make that claim before trial was not "an intentional relinquishment or abandonment of a known right or privilege," *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938). But first there is some underbrush to be cleared away.

Davis challenged the "key man" system of selection of grand jurors used in the Northern District of Mississippi in 1968, when he was indicted, because it was

implemented to exclude qualified Negroes from the grand jury.[1] Cf. *Glasser* v. *United States*, 315 U. S. 60, 85–87 (1942); *Dow* v. *Carnegie-Illinois Steel Corp.*, 224 F. 2d 414 (CA3 1955). The Court notes that the use of the "key man" system was approved by this Court in *Scales* v. *United States*, 367 U. S. 203 (1961).[2] This observation is both irrelevant and misleading. It is irrelevant because the Court's holding today bars prisoners from raising meritorious claims not raised before trial.[3] A prisoner like Davis could not contend after today's decision, for example, that federal jury commissioners had simply refused to place the names of Negroes in the jury box used in 1968. That, of course, would have been unconstitutional. See *Alexander* v. *Louisiana*,

---

[1] Davis alleged, in part:

"(b) that the jury commissioner and Clerk of Court for the Northern District of Mississippi for the past 20 years implementing the 'Keyman' and 'Selectors,' system cause nought to token in their selection of prospective qualifying negro jurymen because of their race and color in violation of Section 1863.

"(c) that the Northern District Court has by its affirmative action taken for the past 20 years has acquiesced to systematically, purposefully, unlawfully and unconstitutionally excluded the prospective qualified resident negroes from the Grand Jury box in violation of Section 1864.

"(d) that the petitioner being a member of the negro race has been prejudiced by the aforesaid violation caused by the violators in carrying out their duties, and has denied petitioner his constitutional right, guaranteed to him by the Sixth Amendment, the right to a fair cross-section of the community." App. 7.

[2] Under a "key man" system, jury commissioners ask persons who are thought to have wide contacts in the community to supply the names of prospective jurors.

[3] Similarly, the Jury Selection and Service Act of 1968, 28 U. S. C. §§ 1861–1869, can be administered in an unconstitutional manner. Its adoption might have some bearing on our decision to review a holding that the "key man" system used in Mississippi in 1968 was constitutional, but the new Act is plainly irrelevant to the question presented by this case.

405 U. S. 625, 628–629 (1972); *Hill* v. *Texas*, 316 U. S. 400 (1942).[4] The Court's observation is misleading because in *Scales* the Court said only that "no impropriety in the method of choosing grand jurors has been shown," as to a grand jury convened in the Middle District of North Carolina in 1955, 367 U. S., at 206 n. 2, 259. I doubt that the Court meant to suggest that the use of a "key man" system was immune from constitutional attack. Indeed, *Carter* v. *Jury Comm'n*, 396 U. S. 320 (1970), and the cases there cited, show that systems essentially the same as a "key man" system may be administered in an unconstitutional manner.[5]

To the extent that our prior decisions speak to the issue in this case, the Court's decision today seems in-

---

[4] Those cases involved discrimination unconstitutional because of the Equal Protection Clause of the Fourteenth Amendment. But the Due Process and Grand Jury Clauses of the Fifth Amendment make unconstitutional the same discrimination in the federal system. *Bolling* v. *Sharpe*, 347 U. S. 497, 499 (1954).

[5] The Court also notes that its conclusion is "buttressed by the Court's observation in *Parker* v. *North Carolina*, 397 U. S. 790, 798 (1970) . . . that '[w]hether the question of racial exclusion in the selection of the grand jury is open in a federal habeas corpus action we need not decide.'" I am at a loss to understand how that observation buttresses the Court's holding today. In *Parker* we were reviewing a state court's decision to deny collateral relief under state law. The state court had refused to consider Parker's claim that the grand jury was unconstitutionally composed because he had failed to raise the claim before trial. That was either an adequate state ground, in a procedural sense, or a construction of the state collateral-relief statute. No matter how considered, though, the Court clearly had no jurisdiction to consider the constitutional claim. It would have been odd indeed had we decided that Parker's claim could or could not be raised in a federal habeas corpus action. The observation on which the majority relies can only mean that the question had not then been decided by this Court. I fail to understand how the fact that a question had not been resolved supports any particular resolution of a similar question. In the sense of "buttressed" used by the majority, *Parker* also buttresses my position.

consistent with them. The Court purports to distinguish *Kaufman* v. *United States,* 394 U. S. 217 (1969), for example, on the ground that we were there "not dealing with the sort of express waiver provision contained in Rule 12 (b)(2)." I had not thought that words were quite so magical as that distinction makes them. It is true, of course, that Rule 12 (b)(2) provides that "[d]efenses and objections based on defects in the institution of the prosecution . . . may be raised only by motion before trial. . . . Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver." *Kaufman* involved a claim that the prisoner was convicted on the basis of evidence obtained in an unconstitutional search. And Rule 41 (e) of the Federal Rules of Criminal Procedure provides that a motion to suppress the use of the evidence obtained in an unlawful search "shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

In *Kaufman,* we indicated that the failure to make a timely motion to suppress would permit the § 2255 court to deny relief where that failure was a deliberate bypass of the orderly procedures set out in the Rules of Criminal Procedure. 394 U. S., at 227 n. 8. Relief under § 2255 would be barred only if there had been an intentional relinquishment of a known right.[6] Rule 41 (e) does not

---

[6] Kaufman had raised the search issue at trial, but his counsel on appeal did not pursue it. 394 U. S., at 220 n. 3. Ordinarily, the failure to pursue a claim in the Court of Appeals bars further review. It does so in the nature of things with respect to consideration by the Court of Appeals. And as to review in this Court, see *Lawn* v. *United States,* 355 U. S. 339, 362 n. 16 (1958).

That a rule makes a waiver "express," rather than a series of holdings doing the same, should affect analysis only if the fact that

use the apparently crucial word "waiver." But its structure is basically the same as that of Rule 12 (b)(2): the motions shall be made at a certain time, and failure to make them may be excused for cause. Nothing in the opinion of the Court suggests why the use of the word "waiver" makes such a difference, so that *Kaufman* permits consideration of claims not made in the time set by Rule 41 (e) in a § 2255 proceeding, while claims not made in the time set by Rule 12 (b)(2) may not be considered. There is a clear line of cases in the courts of appeals holding that failure to make a timely motion to suppress evidence bars an attempt to raise the Fourth Amendment issue on appeal. See, *e. g., United States* v. *Ellis,* 461 F. 2d 962 (CA2 1972); *United States* v. *Volkell,* 251 F. 2d 333 (CA2 1958), and cases cited therein. Certainly the use of the word "waiver" in Rule 12 (b)(2) does not make any clearer the notice to attorneys that the failure to make a timely claim about the composition of the grand jury will bar later attempts to raise that claim.

In light of the similarity between *Kaufman* and this case, the only way that I can understand the Court's action is to assume that the Court believes there are strong reasons of policy justifying "an airtight system of forfeitures," *Fay* v. *Noia,* 372 U. S. 391, 432 (1963), with respect to a claim that the grand jury was unconstitutionally composed, reasons that are not applicable to a claim that evidence unconstitutionally seized was used at trial. All that I can find in the opinion of the Court, however, is one sentence referring to such policy considerations: "Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an

---

the waiver is "express" makes some difference in terms of policy. The Court offers no reasons why the "express" waiver bears on any relevant policies of § 2255.

otherwise valid conviction at a time when reprosecution might well be difficult." [7]

That, I submit, is once again both irrelevant and misleading. It is misleading because it relies on a mechanical invocation of the difficulties of reprosecution in a setting where those difficulties are patently quite small. When evidence used at trial is ordered suppressed and a retrial required, the prosecution must reconstruct its case with a new focus; it may have to gather new evidence, or find new witnesses, or it may have to elicit new testimony from witnesses who testified before. In such a setting, there may well be difficulties in reprosecution. But when a new trial is required so that an indictment may be returned by a properly constituted grand jury, those difficulties simply do not arise. Nothing in the previous trial must be redone; indeed, the prosecution could present its entire case through the testimony given at the previous trial, if it showed that its witnesses were now unavailable and thus that the alleged difficulties in reprosecution were real. Cf. *Mattox* v. *United States*, 156 U. S. 237 (1895). All that the prosecution might lose is the enhancement of credibility, if any, that the actual presence of the witnesses could lend their testimony.

The Court's reference to "[s]trong tactical considerations" is irrelevant because a prisoner would properly be held to have intentionally relinquished his right to raise the constitutional claim if he failed to raise it for tactical reasons. The only issue in this case is whether one who claims that he did not intentionally relinquish a known right is to be afforded the opportunity to prove that claim, as a step toward establishing that his rights were in fact infringed. Saying that Davis, who makes just such a claim, cannot be allowed to prove it because some

---

[7] The sentence preceding that one in the opinion of the Court simply says that some incentive to raise the claim is necessary. It does not say why the system of foreclosures must be airtight.

other prisoners might have made a tactical choice not to raise the underlying issue, is just not responsive to his argument.[8]

The Solicitor General has urged on us policy considerations that at least bear on the decision whether the Government's interest in enforcing an airtight system of forfeitures with respect to claims going to the composition of the grand jury is greater than its interest in enforcing a similar system with respect to claims going to the admission of illegally seized evidence. He argues that the crucial difference lies in the ease with which the prosecution can reconstruct its case on a proper basis. It is relatively easy, he says, to remedy the return of an indictment by an unconstitutionally composed grand jury. All that must be done is to convene a properly composed grand jury. But if the result of a finding of error is to wash out not just the indictment but also an entire trial, that error is very costly to legitimate interests in economy. Thus, failure to raise a claim relating to the composition of the grand jury prior to trial may entail large costs. In contrast, the Solicitor General suggests, failure to raise a claim before trial relating to the use of the fruits of an unconstitutional search is not quite so costly. Whenever the finding that the search was unlawful is made, the prosecution will have to reconstruct its case rather substantially. New witnesses may have to be found, and more emphasis must be placed upon the testimony of witnesses that is not tainted by the search. There is, on this view, a very important reason for enforcing an airtight system of foreclosures

---

[8] The difficulties in proving that a tactical choice was made not to raise the grand jury claim are, so far as I can tell, no different from proving that a tactical choice was made not to make a motion to suppress or to object to a prosecutor's comments on a defendant's failure to testify, both decisions to which this Court has applied the traditional test of waiver. *Kaufman* v. *United States*, 394 U. S. 217 (1969); *Camp* v. *Arkansas*, 404 U. S. 69 (1971).

where the claim is that an easily remedied error has been made—it is simply much more costly to require retrials in those cases.

That argument undoubtedly has some force. But it also goes too far, for it is inconsistent with the power given to reverse a conviction on the basis of plain error to which no objection had been made. Fed. Rule Crim. Proc. 52 (b). An improper argument by a prosecutor in his closing argument may be plain error, for example. *Doty* v. *United States,* 416 F. 2d 887, 890–891 (CA10 1968), and cases cited. Yet timely objection might have cut off the improper argument at a point when an admonition to the jury to disregard it would adequately protect the defendant's rights. A system that permits reversal on the ground of plain error to which no objection had been made but prohibits reversal on the ground that timely objection to the composition of the grand jury had not been made by a defendant who did not intentionally relinquish his right to object, and that justifies the latter rule in terms of governmental interests in economy, seems to me perverse.

The Solicitor General's argument is unpersuasive, ultimately, not alone for the reasons just given, but also because the legitimate governmental interests that support a strict system of forfeitures with respect to claims about the composition of the grand jury are, in my view, outweighed by other important public interests.[9] First, and most important in this case, we must assure that no one is excluded from participation in important demo-

---

[9] Since nothing distinguishes this case from others involving, for example, claims of illegal searches, *Kaufman* v. *United States, supra,* in terms of the governmental interest in finality in criminal litigation, I do not discuss that interest here. The Government must be able to assert interests peculiar to grand jury claims in order to show that those interests outweigh countervailing public interests served by leaving those claims open to later determination.

cratic institutions like the grand jury because of race. Second, convicted offenders will be more amenable to rehabilitation when they know that all their claims of unfairness have been considered, unless they deliberately refrained from raising them at an earlier point. Finally, providing the opportunity to raise such claims at any point in the process, so long as the offender did not willingly conceal them for strategic reasons, helps guarantee that the process of criminal justice is fair, and does so without benefiting someone who was delinquent in his attempts to preserve the fairness of the process.

"For over 90 years, it has been established that a criminal conviction of a Negro cannot stand under the Equal Protection Clause of the Fourteenth Amendment if it is based on an indictment of a grand jury from which Negroes were excluded by reason of their race. *Strauder* v. *West Virginia,* 100 U. S. 303 (1880); *Neal* v. *Delaware,* 103 U. S. 370 (1881)." *Alexander* v. *Louisiana,* 405 U. S. 625, 628 (1972). "People excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion." *Carter* v. *Jury Comm'n,* 396 U. S., at 329. When it fulfills its proper function, the grand jury is a central institution of our democracy, restraining the discretion of prosecutors to institute criminal proceedings. Cf. *United States* v. *Dionisio,* 410 U. S. 1, 17 (1973); *Wood* v. *Georgia,* 370 U. S. 375, 390 (1962). Although there may be other ways to vindicate the right of every qualified citizen to participate in the grand jury without discrimination based on race, *Carter* v. *Jury Comm'n, supra,* this Court has consistently allowed criminal defendants to assert the rights of excluded groups without requiring that they show prejudice in the particular case. *Ballard* v. *United States,* 329 U. S. 187, 195 (1946). This is contrary to the general rule that no one has standing to assert the rights of others, *Moose Lodge No. 107* v.

*Irvis,* 407 U. S. 163, 166–167 (1972). It is justified by the importance of assuring every opportunity to raise claims of unconstitutional discrimination in the selection of grand juries. That principle alone, in my view, would warrant a very restrictive view of attempts to foreclose the opportunity to raise such claims.

But there is more. Offenders who have been indicted by unconstitutionally composed grand juries undeniably are aggrieved. There is a paramount public interest that the process of criminal justice be fair. As we said in *Kaufman* v. *United States,* 394 U. S., at 226, "The provision of federal collateral remedies rests . . . upon a recognition that adequate protection of constitutional rights relating to the criminal trial process requires the continuing availability of a mechanism for relief." The function of collateral relief "has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must *always* be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Fay* v. *Noia,* 372 U. S., at 401–402 (emphasis added). The traditional scope of collateral relief requires, again, that prisoners be afforded the broadest possible opportunity to present claims that their detention is the result of an unconstitutional procedure.[10]

I do not deny that there is an interest in enforcing compliance with reasonable procedural requirements by a system of forfeitures, so that claims will be raised at a time when they may easily be determined and necessary

---

[10] Indeed, this Court has suggested that any narrowing of those opportunities would itself be an unconstitutional suspension of the writ of habeas corpus, Art. I, § 9, cl. 2. *Fay* v. *Noia,* 372 U. S. 391, 406 (1963); *Sanders* v. *United States,* 373 U. S. 1, 11–12 (1963).

corrective action taken. But I do not believe that the system of forfeitures must be so comprehensive and rigid that a person may not raise a claim of discrimination in the selection of the grand jury even though he made no deliberate, informed choice to forgo the claim. Such a system too grievously affects other important interests.

With these principles in mind, the resolution of this case is not difficult. Rule 12 (b)(2) provides that "the court for cause shown may grant relief from the waiver." I would hold that, when a prisoner shows that his failure to raise a claim of discrimination in the selection of the grand jury was not an intentional relinquishment of a known right, he has shown cause for relief from the waiver.[11] The prior cases, which Rule 12 (b)(2) is said to have continued, did not examine in any detail the circumstances in which failure to object was held to constitute a waiver. See, e. g., *United States* v. *Gale,* 109 U. S. 65 (1883); *In re Wilson,* 140 U. S. 575 (1891). Cf. *Kohl* v. *Lehlback,* 160 U. S. 293 (1895). It is clear that in none of those cases did the prisoner show that his failure to object was not an intentional relinquishment of a known right.[12]

---

[11] I do not understand the Court's contention that this is a "liberal requirement." It is true of course that waiver will not be presumed from a silent record. Cf. *Carnley* v. *Cochran,* 369 U. S. 506, 516 (1962). But in a case like this, the record is not silent; it shows that the defendant did not object to the composition of the grand jury. (I do not quarrel with the Court's reliance on the finding made below that, despite Davis' allegations, no pretrial objection was made.) Thus, the burden is on him to show that he did not know of his right to object to the composition of the grand jury, or that, knowing of his rights, he nonetheless did not exercise them because, for example, he feared that to do so would generate hostility that would adversely affect his chances of acquittal.

[12] In a related setting, this Court has interpreted language that might be thought to preclude later claims in a manner similar to that I would adopt here. *Sanders* v. *United States, supra,* involved the question whether failure to raise a claim in a pre-

*Shotwell Mfg. Co. v. United States,* 371 U. S. 341 (1963), does not reflect a contrary interpretation of Rule 12 (b)(2). There a corporation and two of its officers were indicted for attempted income tax evasion. Four years after trial, they attacked the composition of the grand and petit juries. They contended that there was newly discovered evidence that the Clerk of the District Court had failed to use a method of selecting grand jurors designed to secure a cross section of the community. Thus, they did not contend that they had not known of their right to be indicted by a representative grand jury. Clearly, to establish that that right had been infringed, they had to find evidence relating to the method of selection. The District Court found that such evidence was "notorious and available to petitioners in the exercise of due diligence before the trial." *Id.,* at 363. I have little difficulty in saying that, where one must present evidence in order to support a constitutional claim, the failure to exercise due diligence in searching for that evidence is a deliberate relinquishment of that claim.

The interpretation I would give to "good cause" is supported, finally, by this Court's insistence that acquiescence in the loss of constitutional rights is not lightly to be assumed. See *Johnson v. Zerbst,* 304 U. S. 458, 464 (1938); *Aetna Insurance Co. v. Kennedy,* 301 U. S. 389, 393 (1937), and cases cited therein at n. 2. It is well established that a procedural rule that unreasonably

---

vious petition for collateral relief precluded consideration of that claim in a later petition. There was a statutory provision that "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." 28 U. S. C. § 2255. The term "similar relief" was interpreted to mean relief based upon the same claim that was presented before, or upon a claim that had intentionally been relinquished, 373 U. S., at 15–18.

precludes the vindication of constitutional rights itself raises serious constitutional questions. See, *e. g., Reece* v. *Georgia,* 350 U. S. 85 (1955); *Davis* v. *Wechsler,* 263 U. S. 22 (1923); *Williams* v. *Georgia,* 349 U. S. 375, 399 (1955) (Clark, J., dissenting). In *Johnson* v. *Zerbst, supra,* this Court adopted a definition of waiver that can be applied to serve all valid interests in barring untimely assertions of constitutional rights while not precluding claims by defendants who have not abused the procedural system. No convincing reasons have been advanced to adopt a more restrictive definition of waiver in this case. If Davis did not intentionally relinquish a known right, I do not see any valid interest in keeping him from asserting that right in this § 2255 action.

Davis alleged in his motion for collateral relief that "he had not waived nor abandoned this right to contest the Grand Jury array." App. 8. This is enough, in a motion submitted by a prisoner unaided by counsel, to constitute an allegation that he had not intentionally relinquished a known right. Cf. *Haines* v. *Kerner,* 404 U. S. 519 (1972). It is a factual allegation not refuted by the record in the case, 28 U. S. C. § 2255, and Davis should have an opportunity to prove this allegation. I would therefore reverse the judgment below.