Charles A. GALE, Petitioner-Appellee,

v.

David R. HARRIS, Superintendent, Greenhaven Correctional Facility, Respondent-Appellant.

No. 1019, Docket 78–2028.

United States Court of Appeals, Second Circuit.

Argued June 19, 1978.

Decided July 26, 1978.

---

Timothy J. McGinn, New York City (Steven R. Kartagener, New York City, of counsel), Mario Merola, Dist. Atty., Bronx, N. Y., for respondent-appellant.

D. Brock Green, Poughkeepsie, N. Y. (David Steinberg, Poughkeepsie, N. Y., Daniel J. Steinbock, Albany, N. Y., Prisoners' Legal Services of New York, of counsel), for petitioner-appellee.

Before OAKES and VAN GRAAFEILAND, Circuit Judges and PIERCE, District Judge.[*]

PER CURIAM:

Petitioner instituted this habeas corpus proceeding in the United States District Court for the Southern District of New York, contending that his constitutional rights had been violated during his state trial by the judge's limitation of his examination of a crucial witness.[1] Judge Duffy, relying on our opinion in *Welcome v. Vincent*, 549 F.2d 853 (2d Cir.) *cert. denied*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977), a case which involved a co-defendant of the petitioner, granted the writ. We reverse.

In 1970, petitioner and two co-defendants, Welcome and Holmes, were convicted on four counts of murder and felony-murder after a jury trial in the Supreme Court of New York. The convictions were affirmed without opinion by the Appellate Division, *People v. Gale*, 39 A.D.2d 839, 331 N.Y.S.2d 994 (1st Dept. 1972), and leave to appeal to the New York Court of Appeals was denied.

The murders for which Gale, Welcome, and Holmes were convicted occurred on November 2, 1967. The circumstances surrounding the killings and the subsequent state court trial are discussed in Judge Oakes' opinion in *Welcome, supra*, and detailed repetition is unnecessary. Petitioner was identified by three eyewitnesses as one of three armed men who killed Seymour and Hyman Katz at Katz Brothers' realty office. In addition to the eyewitness testimony, petitioner was linked to the crime by several items of physical evidence. A hat with the name "Hassan" stamped on the inside and a pair of eyeglasses, chewed at the frame ends, were found at the scene of the crime. Petitioner's nickname was Hassan, and evidence was presented that he wore glasses like those found at the crime and that he regularly chewed the ends of his eyeglass frames. Lastly, a set of keys

---

[*] Lawrence W. Pierce, of the Southern District of New York, sitting by designation.

1. The State argues that because petitioner failed to raise this issue on direct appeal in state court, we should not consider it now. *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), held that a federal court, hearing an application for habeas corpus, might consider a claim not raised in state court if the petitioner had not deliberately bypassed orderly state procedures. In recent years, the Supreme Court has to some extent undercut this rule. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). In *Wainwright*, the Court held that where the petitioner failed to object to the admission of testimony which violated *Miranda*, a federal court could not consider the *Miranda* claim, absent a showing of cause for the failure to object and prejudice resulting from the failure. The State argues that the "cause and prejudice" test of *Wainwright*, rather than the "deliberate bypass" test of *Fay*, should govern the situation where the defendant objected at trial but abandoned his objection on appeal. Two courts have accepted this argument. *Evans v. Maggio*, 557 F.2d 430 (5th Cir. 1977); *Frazier v. Czarnetsky*, 439 F.Supp. 735 (S.D.N.Y. 1977). We need not reach this issue here because we find petitioner's claim on the merits to be without substance.

was discovered at the scene, one of which fitted the lock on the door of the apartment of petitioner's common-law wife.

Petitioner presented no evidence in his own behalf. Welcome, on the other hand, presented an alibi defense, relying on the testimony of several individuals who stated that he had been at his mother's home when the crimes were committed. He also called one Albert Cunningham as a witness.

Cunningham was a crucial part of Welcome's defense because he had previously confessed to participation in the Katz murders. Although he later repudiated the confession, he had been indicted and tried for the crime. After his first trial ended in a mistrial, a second trial was begun. However, the charges against him were dropped during the trial, and Welcome, Gale, and Holmes were indicted.

In the repudiated confession, Cunningham stated that he went to the Katz Brothers' realty office with three men; one Green, one Branch, and a third fellow he did not know, who was wearing a hat and glasses similar to those found at the scene. He said that he waited outside while the others went into the office. He then heard shots, became excited, and ran away.

On direct examination by Welcome, Cunningham was asked if he had driven to the Katz office with Branch and Green and robbed the office. Cunningham said that he had. On cross-examination, however, he denied participation in, or knowledge of, the robbery. When questioned about the response he had given on direct examination, he replied that he had thought defense counsel "was talking about the confession." Thereafter, petitioner's counsel attempted to question Cunningham about the confession, but the trial court ruled that Cunningham was not a hostile witness, and therefore could not be impeached in this manner.

Welcome brought a habeas corpus proceeding in the United States District Court for the Southern District of New York, asserting that the trial court's failure to permit examination of Cunningham about his confession deprived Welcome of his constitutional right to a fair trial. Relying on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), we held that Welcome's constitutional rights had been violated, and we ordered that he be retried or released.[2] *Welcome v. Vincent, supra*, 549 F.2d at 859. Shortly after Welcome's success, this action was commenced.

Petitioner's attempt to ride in on Welcome's coattails is in vain. Our decision in *Welcome* was

> narrowly confined to rare situations of this sort, where another person, present on the witness stand, has previously confessed that he, *rather than the defendant on trial*, has perpetrated the crime.

*Id.* at 858–59 (emphasis added). The italicized language is an aspect of *Welcome* that petitioner would have us ignore. Although Cunningham's confession tended to exculpate Welcome, it tended, if anything, to inculpate petitioner. Cunningham stated that he did not know the third man who went with him to the Katz office but that the unidentified man wore a hat and glasses similar to those found at the scene. Because of the convincing evidence that the hat and glasses belonged to petitioner, he stands in a wholly different position than Welcome with respect to Cunningham's confession. We are unable to say, therefore, that the trial judge's ruling denied petitioner a fundamentally fair trial. *See Lipinski v. People*, 557 F.2d 289 (2d Cir. 1977). Accordingly, the district court erred in issuing the writ.

Reversed.

**2.** Subsequently, co-defendant Holmes sought habeas corpus relief on the same grounds. The district court granted the writ, and the State did not appeal. *Holmes v. Bombard*, 76 Civ. 747 (S.D.N.Y. July 7, 1977) (Broderick, *J.*).