UNITED STATES of America, Plaintiff,

v.

George Allen BLAIR, Defendant.

No. 97–CR–81440–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 24, 1998.

William Richards, Asst. U.S. Atty., Detroit, MI, for Plaintiff.

Milton R. Henry, Bloomfield Hills, MI, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO VACATE CONVICTION AND TO DISMISS INDICTMENT

DUGGAN, District Judge.

On December 9, 1997, defendant was indicted by a grand jury on five counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), and one count of continuing criminal enterprise in violation of 21 U.S.C. § 848. On January 9, 1998, defendant filed a motion to quash search warrants, to suppress evidence, and to dismiss cause. On February 2, 1998, this Court entered an order denying defendant's motion to quash search warrants, to suppress evidence, and dismiss cause.

On February 5, 1998, a bench trial began after defendant, in open court, and in writing, expressly waived his right to a jury trial. On February 10, 1998, defendant was found guilty of the five counts of possession with intent to distribute a controlled substance and not guilty of the charge of continuing criminal enterprise.

On March 25, 1993, defendant George Blair filed a motion to vacate his conviction and to dismiss grand jury indictment alleging that the indictment was returned by a grand jury "which was selected, drawn and summoned in a manner which violated the Jury Selection and Service Act of the United States, 28 U.S.C. § 1861 *et seq.*, as well as the Fifth and Sixth Amendment to the United States Constitution." (Df.'s Mot. at ¶ 5). In support of his motion, the defendant relies on the recent Sixth Circuit decision in *U.S. v. Ovalle,* 136 F.3d 1092 (6th Cir.1998). In *Ovalle,* the Sixth Circuit concluded that this district's Jury Selection Plan was not constitutionally valid. This Plan reduced the number of white potential jurors in order to achieve a percentage of African American potential jurors consistent with the African American population in the district. As this Jury Selection Plan was used to select the

Grand Jury which indicted defendant, defendant contends that his indictment must be dismissed.[1] This Court disagrees.

■ Fed.R.Crim.P. 12(b)(2) requires that any defense or objection based on defects in the indictment must be raised prior to trial. In *Davis v. United States,* 411 U.S. 233, 234, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), the Supreme Court addressed the effect of Fed. R.Crim.P. 12(b)(2) on a post-conviction motion for relief "which raises for the first time a claim of unconstitutional discrimination in the composition of a grand jury." In ruling on this issue, the Supreme Court stated:

We believe that the necessary effect of the congressional adoption of Rule 12(b)(2) is to provide that a claim once waived pursuant to that Rule may not later be resurrected, either in the criminal proceedings or in federal habeas, in the absence of the showing of "cause" which that Rule requires. We therefore hold that the waiver standard expressed in Rule 12(b)(2) governs an untimely claim of grand jury discrimination, not only during the criminal proceeding, but also later on collateral review.

*Id.* at 242, 93 S.Ct. 1577. In fact, in *Ovalle,* the Sixth Circuit applied this rule to bar certain claims:

Federal Rule of Criminal Procedure 12(b)(2) provides that "[d]efenses and objections based on defects in the indictment or information . . ." must be raised prior to trial. Federal Rule of Criminal Procedure 12(b)(2) governs an untimely claim of discrimination in the selection of the grand jury, "even when such challenges are on constitutional grounds." *Davis v. United States,* 411 U.S. 233, 238, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) (citing *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963)). "Challenges of the petit jury are treated the same as challenges of the grand jury." *United States v. Hearst,* 638 F.2d 1190, 1196 (9th Cir.1980) (citing *Shotwell Mfg. Co.,* 371 U.S. at 362, 83 S.Ct. 448), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981).

Failure to raise an objection to the selection of the grand or petit jury prior to trial "shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." FED.R.CRIM.P. 12(f); *see also United States v. Oldfield,* 859 F.2d 392, 396 (6th Cir.1988).

*Ovalle,* 136 F.3d at 1107.

Defendant has not asserted any "cause" for not raising this issue in a timely manner, nor does this Court believe, under the facts presented, that he can establish "cause."

The Eastern District's Jury Selection Plan was adopted by this Court and approved by the Sixth Circuit in 1992. The Administrative Orders implementing this Plan have been issued regularly since its adoption and have been posted in the courthouse. The Plan is a public document. Concerns about the constitutionality of the Plan were addressed in *United States v. Greene,* 971 F.Supp. 1117 (E.D.Mich.1997), a case decided by the Hon. Gerald E. Rosen on July 23, 1997, which received wide spread publicity. (See attached).

Furthermore, the Court held a public meeting on August 20, 1997, the purpose of which was to address concerns about the "constitutionality" of the Jury Selection Plan. The hearing was well publicized and well attended by representatives of numerous local bar associations and other interested groups. In this Court's opinion, defendant and defense counsel were on notice with respect to the provisions of the Plan well before February 5, 1998, the date on which trial began and the date on which defendant elected to waive his right to a jury trial. There-

---

1. In actuality, the Jury Selection Plan which was used to select the grand jury that indicted defendant is not the same Jury Selection Plan that was the subject of the decision in *Ovalle.* On April 8, 1997, Chief Judge Anna Diggs Taylor issued Administrative Order, 97–AO–019 which provided that jurors whose names were "removed" were not eliminated from potential jury service; rather, their jury service was deferred because their names were retained for use in future jury wheels. In the Jury Selection Plan at issue in *Ovalle,* the jurors' names that were removed to balance the wheel were not retained for future selection. According to Court records, the grand jury that indicted defendant was selected on May 15, 1997, pursuant to Judge Taylor's Administrative Order of April 8, 1997.

fore, the Court concludes that defendant cannot establish cause for not raising this issue prior to the commencement of trial.

■ Moreover, in order to prevail, defendant must also establish "prejudice." *See Ovalle,* 136 F.3d at 1107 (citing *Davis v. United States,* 411 U.S. at 245, 93 S.Ct. 1577). Under the facts presented here, the Court does not believe that defendant can establish prejudice. The jury plan which defendant challenges and which the Sixth Circuit found to be constitutionally defective was intended to, and did in fact, increase the number of African Americans in the jury pool to more accurately reflect the African American population within the Eastern District of Michigan. Defendant, an African American, has not, and in this Court's opinion, cannot, demonstrate that selection of the grand jury from a jury pool which increased the number of African American potential jurors somehow prejudiced him.

For the reasons set forth above,

**IT IS ORDERED** that defendant George Blair's motion to vacate his conviction and dismiss the grand jury indictment is **DENIED.**

The Detroit News

# The Metro

*Your local news section for Tuesday, April 22, 1997*

# Exclusion of nonblacks from juries scrutinized

## Federal judge will hear case to determine if process is unconstitutional.

By David Josar
*The Detroit News*

Thousands of whites and other nonblacks have been disqualified from serving on federal juries in Metro Detroit so more blacks could be selected, and now a judge will hold a hearing to determine if the process is unconstitutional.

The hearing before U.S. District Judge Gerald E. Rosen is expected to be scheduled in several weeks to determine if the practice prevented LaTonya Cray Greene, 29, from getting a fair trial last May. A federal jury convicted her of twice robbing the same bank in Pontiac.

Greene hasn't been sentenced in that case, but she's in Oakland County Jail on charges of passing a bad check.

Greene's lawyers claim jury selection in Detroit federal court "provides for the deliberate, race-conscious removal of white jurors," according to court papers.

"If you just start kicking people off jury duty based on race — either black or white — that's wrong," said Robert A. Sedler, a Wayne State law professor whom Rosen appointed to work on the case.

"People should be concerned," said R. Steven Whalen, Greene's other attorney. "The irony of this case is when this (jury selection) plan was formed, it was with the best of intentions. We have the same best intentions to make sure we get a fair racial proportion of people who are jurors."

Although Greene is black, Whalen said deliberately excluding any juror — white or black — based on race is cause for a new trial.

Federal prosecutors and court officials defended the way juries are selected, saying the methods are fair and necessary to ensure that the numbers of blacks who serve jury duty represent the percentage in the community.

They also complained that incomplete and out-dated figures from the U.S. Census add to the problem.

This case is believed to be the first in the nation in which a person has claimed he or she received an unfair trial because white or non-black people were excluded as jurors.

According to court records compiled in the case, from Nov 15, 1995 to April 15, 1996, former Chief U.S. District Judge Julian Abele Cooke Jr. ordered the names of 1,957 whites and nonblacks removed from the jury pool to give blacks better representation in the pool.

Cooke signed four orders to kick off non-black jurors after less than 19.1 percent of the jury pool was composed of black jurors. (According to 1990 U.S. Census data, 19.1 percent of residents are black in the nine-county area used to select juries for Detroit federal court.)

Attorneys involved with the case

*Please see JURIES, Page 2C*

# JURIES

*Continued from Page 1C*

estimate thousands more people have been barred for racial reasons from being considered for jury selection.

Those people had already filled out juror questionnaires and were declared eligible for jury duty. Their names were not resubmitted for future juries.

The process has been going on since 1992, when court officials began randomly excluding whites and non-blacks if they couldn't get enough qualified black jurors.

Two weeks ago, the court reinstated the old method. The court now mails extra juror surveys to residents in about 20 Wayne and Oakland county ZIP codes where more than 65 percent of the population is black.

Greene raised the issue of a racially biased jury pool before, during and after her trial, when the only minorities on the jury were a black man and a Hispanic man.

Whalen said that if Rosen grants Greene a new trial, it would "not open the floodgates" for other people convicted by juries in Detroit federal court because the deadline to file motions would most likely have passed in those cases.

Federal prosecutors say court officials have gone to great lengths to ensure that the jury pools reflect the racial makeup of the community.

The prosecutors note in court documents that to ensure there are enough black jurors, court officials began getting names from both voter-registration lists and driver's licenses.

About every three years, federal court officials in Detroit create a list of about 150,000 names of potential jurors from voter lists and driver's license information in the nine-county area.

Questionnaires are sent to people on the list, with questions about race and other basic information, and after the questionnaires are returned, another list is made of people who are eligible to be jurors.

People from that list are then randomly served jury summonses.

Sedler said "affirmative action" is necessary to guarantee the entire community has a voice in the judicial process and jury selection.

He said all the court had to do was send more jury questionnaires to black neighborhoods — not eliminate whites.

"The problem is when you use race, you have to do it right," Sedler said.

**SPORTS:**
Tigers salvage final game of series against Yanks with 3-1 victory. **B-1**

MONDAY

July 14 1997 ☆☆☆

# THE OAKLAND PRESS

# 'Rights of whites are ... violated'

■ Excluding jurors because of race 'undermines integrity of jury system,' lawyer says

By JENNIFER CHAMBERS
Of The Oakland Press

The same law that protects blacks from being eliminated from a jury simply because they are black should protect whites as well, argues an attorney for a convicted bank robber.

A federal court policy of limiting whites and others in potential jury pools to create a larger black representation is being challenged in a case before U.S. District Judge Gerald Rosen in Detroit.

The challenge is possibly the first in the nation in which a defendant has claimed he or she received an unfair trial because whites — not blacks — were excluded as jurors.

Ironically, the defendant

protesting the lack of white jurors — LaTonya Cray Greene, 29, of Southfield — is black.

Defense attorney Robert Sedler said dismissing any potential jurors — in this case whites and other nonblacks — because of race violates their constitutional rights and those of his client.

Court officials say disqualifying nonblacks is necessary to ensure that juries mirror the community.

The federal court policy under fire is called "subtrac-

tion" or "balancing," where non-blacks are randomly removed from jury pools until 19 percent of the jury is black.

Court Administrator John Mayer said 19 percent was the proportion of blacks older than 18 living in the nine counties that make up the court's Eastern District in Michigan. Those counties include Oakland, Wayne and Macomb.

Under this practice, used in federal courtrooms in Detroit,

**SEE LAW/A-9**

Robert Sedler