**Paul McAndrew GRAHAM**

v.

**STATE OF MARYLAND.**

**Civ. A. No. M–77–1427.**

United States District Court,
D. Maryland.

June 27, 1978.

Paul McAndrew Graham in pro per.

Charles G. Bernstein, Federal Public Defender, and Lawrence A. Arch, Asst. Federal Public Defender, Baltimore, Md., for plaintiff.

Francis B. Burch, Atty. Gen. and John P. Stafford, Jr., Asst. Atty. Gen., Baltimore, Md., for defendant.

## JUDGMENT ORDER

JAMES R. MILLER, Jr., District Judge.

Upon consideration of the Report and Recommendation of the United States Magistrate dated May 31, 1978, and since no objections have been filed within the time allowed by law, see 28 U.S.C. § 636; Local Rule 81 (D.Md.1977), it is this 27th day of June, 1978, by the United States District Court for the District of Maryland ORDERED:

1. That the Report and Recommendation of the Magistrate is accepted by the Court, and, upon de novo consideration, is adopted by the Court in all respects.

2. That judgment shall be entered for petitioner.

3. That the petitioner shall be released from custody to the extent that he is held as a result of the conviction of murder on September 28, 1970, provided, however, that the petitioner may be continued in custody pending a retrial within ninety days of this date on said charge, if the State chooses so to do.

## MEMORANDUM AND RECOMMENDATION

CLARENCE E. GOETZ, Magistrate.

This case was referred to me for consideration of the pending motions by Order of the Honorable James R. Miller, Jr., United States District Judge, entered herein pursuant to Local Rule 80 on September 28, 1977. A hearing on the pending motions was held on May 17, 1978, and evidence was taken.

### I. BACKGROUND

This is the third petition for habeas corpus relief in this Court by Mr. Graham. He was denied relief in both of the previous petitions, on grounds unrelated to the single contention presented in the instant case. Graham v. Warden, No. M–75–1092 (D.Md. Dec. 5, 1975), aff'd, No. 76–8026 (4th Cir. Nov. 3, 1977) (per curiam); Graham v. Warden, Maryland Penitentiary, No. 74–986 (D.Md. Dec. 16, 1974).

The issue in this case concerns petitioner's allegation that the trial judge's instructions to the jury placed an unconstitutional burden upon him to prove his alibi defense in contravention of Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

The historical facts of this case are fully set forth in Graham v. Warden, M–75–1092, supra, and need not be recounted here in detail except as to proceedings subsequent to that case.

Petitioner was convicted on September 28, 1970 of murder and robbery with a deadly weapon. In the appeal from the trial court's denial of his sixth petition for post conviction relief, petitioner's conviction for robbery with a deadly weapon was vacated as violative of double jeopardy principles. The Court of Special Appeals, relying on Newton v. State, 280 Md. 260, 373 A.2d 262 (1977), found that petitioner's conviction for robbery with a deadly weapon could not co-exist with the murder conviction, because the murder was based on a felony-murder theory, and the robbery charge thus became a lesser included offense of the murder. Graham v. State, No. 73, September Term, 1977, filed July 8, 1977.

### II. EXHAUSTION OF STATE REMEDIES

Before a federal court may entertain objections to state criminal proceedings by way of habeas corpus, the prisoner must first demonstrate that he has exhausted any state remedies available to him. Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

The respondent's answer, filed herein on September 7, 1977, indicates that petitioner had not previously presented the issue raised in this petition to the state courts of Maryland and further, that petitioner's seventh post conviction petition was then pending in the state courts. Thus, this Court was urged to stay consideration of this petition until the post conviction action was concluded.

■ I am of the opinion that petitioner has fully exhausted his state remedies with regard to the single issue presented in this petition. The documents submitted at the May 17 hearing show conclusively that the state courts have twice considered this issue. The doctrine of "exhaustion of state remedies" is one of comity, designed to give the states the first opportunity to apply controlling legal principles to the facts bearing upon the constitutional claims of a state criminal defendant before any application for relief is made to the federal judiciary. *United States v. Pate*, 359 F.2d 749 (7th Cir. 1966). The state courts have been given that opportunity, and the exhaustion doctrine requires no more.

## III. WAIVER

The state courts which have treated the issue of waiver in this case have determined that petitioner has waived his rights on this issue. Under some circumstances, habeas corpus applicants have been held to have forfeited their right to federal habeas corpus relief by failing to pursue state methods of correction of trial error. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Accordingly, it is necessary to consider whether petitioner has waived any rights which he may have. For purposes of analysis, a distinction must be drawn between waiver of state remedies and waiver of federal constitutional rights.

### A. *State Remedies*

A finding by a state court that a prisoner has waived his rights under post conviction procedure to litigate a claim of trial error has a two-fold impact. First, it bears on the issue of exhaustion of state remedies. As in this case, despite the fact that the merits of the claim are not thereby considered, it can have the effect of exhausting state remedies.

Judge Cole held, in petitioner's fifth post conviction action, that petitioner waived the right to contest the erroneous alibi instruction issue because he had failed to raise the issue in any of his earlier petitions.

The opinion of Judge Cole on post conviction, and the exhibits submitted at the hearing on May 17, 1978 reveal that petitioner raised this issue in his fourth post conviction petition, which was consolidated with Graham's state habeas corpus petition. With respect to this issue, Judge Cole held:

If the petitioner could have raised the issues in an earlier proceeding but failed to do so, he bears a burden to show special circumstances which would account for the omission. The petitioner, having neglected to raise these issues seasonably, has waived all right to raise them in the instant petition. It is particularly obvious that petitioner could have raised his fourth contention, respecting jury instructions, in an early proceeding, since his first petition raised a similar issue regarding jury instructions.

*Graham v. Warden of Maryland Penitentiary*, No. 2279, Criminal Court of Baltimore City, filed April 26, 1976.[1] It is stipulated by the parties that the petition was filed in February, 1976. Petitioner, who was unrepresented at the time, took no appeal from Judge Cole's ruling. In sum, because petitioner could have raised the issue before petition number five and did not, he was held to have waived it in petition number five. In effect, it is a state determination that there is not, at least by way of that proceeding, an "available and effective" state remedy. 28 U.S.C. § 2254 (1976).

The second effect of a state finding of waiver is that the constitutional error itself may be waived for federal habeas corpus purposes.

### B. *Federal Constitutional Issue*

Recently, in *Wainwright v. Sykes, supra,* the Supreme Court had occasion to consider the effect of a state criminal defendant's

---

1. The opinion of June 2, 1977 by Judge Karwacki found a waiver for failure to raise the issue in petition number five. Clearly, that holding was incorrect and is now immaterial in light of the evidence adduced at the May 17, 1978 hearing.

failure to utilize the corrective procedures available in the state by way of a contemporaneous objection at trial to his contested confession. The Court, noting the need for finality in criminal prosecutions and the need to prevent piecemeal litigation of issues properly before a single forum, held that, absent a showing of "cause" for the failure to pursue the state remedy and "prejudice" resulting therefrom, a state prisoner may be deemed to have waived his rights based on an alleged trial error of constitutional import. 433 U.S. at 87–91, 97 S.Ct. 2497.[2]

In this case, there are, in effect, three waivers which must be analyzed. The first is petitioner's failure to object to the alibi instruction at trial.

### 1.

The short answer to this question, which has not been seriously contested, is that petitioner's failure to object at trial was occasioned by the novelty of the principles enunciated in *Mullaney v. Wilbur, supra.* The appellate courts of Maryland have repeatedly held that *Mullaney* errors occurring in trials held prior to the *Mullaney* decision were plain error, not waived by the defendant's failure to object. *Evans v. State,* 28 Md.App. 640, 349 A.2d 300 (1975), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976); *State v. Grady,* 276 Md. 178, 345 A.2d 436 (1975); *Brown v. State,* 29 Md.App. 1, 349 A.2d 359 (1975). Of course, the *Mullaney* holding has been held to be fully retroactive. *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). As petitioner's trial was held in 1970, he cannot be held to have waived this allegation by failure to make timely objection at trial.

**2.** The Court specifically left open the question of whether the "cause" and "prejudice" standard would apply in a case like Fay in which a failure to appeal was involved. 433 U.S. at 88 n. 12, 97 S.Ct. 2497. The less favorable standard of *Wainwright* will be utilized for the purpose of this analysis; if petitioner is able to meet the more restrictive *Wainwright* showing, he would *a fortiori* be able to meet the "deliberate waiver" standard of *Fay v. Noia.*

The recent decision in *Dooley v. Sheffer,* 572 F.2d 994 (4th Cir. 1978), requires no different result. The court, relying on a footnote in the *Hankerson* decision, 432 U.S. at 244 n. 8, 97 S.Ct. 2339, found that an erroneous instruction in a pre-*Mullaney* trial could be deemed waived if the state courts declined to consider the issue, as a matter of state procedure, for failure to object at trial. A limitation evident within that note is applicable to and distinguishes this case. As in *Hankerson,* the state in *Evans* and its progeny has uniformly considered instructions violative of *Mullaney* as plain error, cognizable on direct appeal despite the failure to object, so long as the trial took place prior to *Mullaney.* Thus, the result of *Dooley v. Sheffer* does not obtain in this case.

### 2.

The potential for a waiver of this allegation for failure to raise it in an earlier post conviction petition, must also be analyzed in light of the principles of *Wainwright v. Sykes, supra.*

In proposing the "cause" and "prejudice" analysis, the Court noted only that these terms should not be defined as broadly as a "knowing and deliberate waiver." 433 U.S. at 87, 97 S.Ct. 2497. The development of the standard was left to the district courts for future cases. *Id.*

The cases cited in *Wainwright v. Sykes* for the "cause" and "prejudice" standard are *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). Those are the guiding cases from which the meaning of the standard is to be gleaned.

*Wainwright v. Sykes* contains many factual differences from this case, but the principles seem fully applicable nevertheless. The question of whether a possible avenue for presentation in the state courts has been bypassed is analytically the same whether the procedure is available at trial or collaterally.

In each of these cases, the Court found a valid and binding waiver of constitutional issues at the state level. In *Davis,* the Court found that no "cause" had been shown for the defendant's failure to object to the racial composition of the grand jury which indicted him, implying that all of the facts necessary to his constitutional claim were available at the time of trial. Moreover, the trial court specifically found that no actual prejudice had been shown, in that there was an abundance of evidence to support the indictment, and there were no racial overtones to the case.

In *Francis v. Henderson,* the Court applied the *Davis* rule to state criminal proceedings, again in the context of a complaint concerning the racial composition of the grand jury by which Francis was indicted. Little elaboration of the "cause" and "prejudice" rule is contained in the Court's opinion. It appears that whatever these terms mean, the inmate in that case just did not meet the test.

In *Wainwright v. Sykes,* the facts give some greater meaning to the standard enunciated. The Court observed that the prisoner had made no effort to explain his failure to utilize the contemporaneous objection rule to challenge the admission of his confession. Thus "cause" was clearly not shown. As to "prejudice", the Court found that the strength of the state's case at trial would negate any allegation of actual prejudice.

Based upon a review of the foregoing cases, it appears that the "cause" referred to means a reasonable and valid explanation other than a tactical decision to forego the available avenue of redress. As to "prejudice", some actual and substantial detriment, bearing on the fairness of the trial, must be shown.

In the instant case, the question of cause is open to some interpretation.

Judge Cole's holding on this matter in P.C.P.A. Number 5 was that the contention was waived for failure to raise it in an earlier petition. Petition Number 5 was filed some five months subsequent to the decision in *State v. Grady, supra,* and three months after the Court of Special Appeals decision in *Evans v. State, supra,* in which *State v. Grady* was accorded retroactive effect.

It is submitted that Judge Cole's holding on this point is unduly restrictive, and that, for federal constitutional purposes, no absence of "cause" is demonstrated in this case. In essence, it is the state's position that petitioner should be charged with knowledge of this developing area of case law, and that his failure to raise this contention prior to P.C.P.A. Number 5 was done without "cause." For several reasons, I am unable to subscribe to the State's position.

While mindful of the Court's *caveat* in *Wainwright v. Sykes, supra,* that a "knowing and intelligent" waiver, in the tradition of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), need not be shown, I am nevertheless unable to ascribe any acceptable level of knowledge to this petitioner which would negate a showing of "cause."

The obvious reason for petitioner's failure to raise this issue before P.C.P.A. Number 5 is that he was unaware of the principle.

The lack of clarity in this area of criminal law has led the appellate courts of Maryland to expend significant amounts of effort in an attempt to guide state judges and practitioners. Judge Moylan's opinion in *Evans v. State, supra,* covers in excess of one hundred pages in the Maryland Reports. An indigent prisoner simply cannot reasonably be expected to fathom these matters so that his failure to raise a contention based thereon, shortly after the expositive case is decided, can be considered to be indicative of knowledge.

Moreover, the dissemination of legal materials in prisons is such that it is not at all surprising that an inmate would be unaware of the existence and meaning of a decision important to collateral attacks on his conviction. As Judge Kaufman observed in his lengthy review of state prison legal facilities, "[c]oncededly, Maryland's

confinement institutions do not contain appropriate law libraries." *Hall v. Maryland,* 433 F.Supp. 756, 777 (D.Md.1977).

Graham testified at the hearing on this matter, and I specifically find his testimony to be credible, that P.C.P.A. Number 5 was filed as soon as he became aware of the decision in *Mullaney v. Wilbur* and well before he became aware of *Evans v. State,* which interpreted *Mullaney* and gave retroactive effect to *State v. Grady. Grady* was the first Maryland case to consider the effect of an erroneous allocation of proof on an alibi instruction. Graham testified that he understood the impact of *Mullaney* on Maryland's murder-manslaughter instructions and himself drew the analogy to alibi instructions, but was aware of no state case specifically considering alibi instructions in light of *Mullaney's* principles.

Finally, it should be noted that a significant procedural predicate for the waiver holding in *Wainwright v. Sykes, supra,* is absent in the instant case. There, the Court in large part sought to make a criminal trial the "main event" and avoid "sand bagging" by defense counsel in an effort to gain procedural advantage by holding constitutional issues in reserve for presentation to another forum, while maneuvering for a not guilty verdict at trial.

That tactical gamesmanship is certainly non-existent here. Petitioner had absolutely nothing to gain by holding this issue in reserve. Whatever advantage may accrue in the trial setting vanishes once the litigant finds himself incarcerated.

On the basis of the foregoing analysis, I conclude that "cause" for the failure to raise this contention prior to P.C.P.A. Number 5, or an appeal therefrom, is demonstrated in this case, *viz.* that petitioner was unaware of the availability of the issue.

### 3.

The third potential waiver concerns the failure to appeal from Judge Cole's denial of relief in P.C.P.A. Number 5. The "cause" and "prejudice" standard is also applicable here.

The explanation given by petitioner is that, being unaware of any authority for applying *Mullaney* to alibi instructions, he did not believe that he had any grounds to appeal the denial. I find this explanation both credible and reasonable. Petitioner was unrepresented by counsel, see *Fay v. Noia,* 372 U.S. at 439, 83 S.Ct. 822, and had no direct authority on which he could rely in pressing his claim at the appellate level. Any suggestion that Graham wilfully waived his constitutional claim is belied by his reiteration of this issue in P.C.P.A. Number 6, filed shortly after he became aware of the state cases applying *Mullaney* to erroneous alibi instructions. That is, when his claim later turned out to be the law, he raised it again on post conviction *and* appealed from the trial court's unfavorable action.

The question of prejudice to petitioner's trial requires no extended discussion in this case. If, indeed, petitioner was given the burden of proving his alibi defense, prejudice is patent. It hardly needs to be repeated that it is inconsistent with the Constitution and our system of criminal justice to place the burden on a defendant to prove his innocence. An erroneous instruction on the burden of proving an alibi would do precisely that. *See Part V, infra.*

### IV. TRANSCRIPT OF STATE PROCEEDINGS

A matter preliminary to final resolution of this case concerns the state of the record before this Court.

The trial transcript was submitted to this Court in answer to petitioner's first habeas corpus petition, *Graham v. Warden, Maryland Penitentiary, supra.* This document does not contain a record of the trial judge's charge to the jury. Judge Karwacki noted that the jury instructions were not before him because they were either not recorded or not transcribed by the court reporter. In this Court's Order to Show Cause in the instant case, the respondent was called upon to produce the trial transcript and all other relevant documents.

(Paper No. 2). Counsel for the respondent has represented that no record of the relevant portion of the state proceedings exists because it was destroyed or was otherwise untranscribable. Documents showing its unavailability have also been submitted. Petitioner has made a similar representation. (Papers No. 8, 9).

 It is true, of course, that the habeas corpus applicant bears the burden of proving his constitutional claim. However, it has long been recognized that the state is the appropriate party upon which the burden of maintaining records of criminal proceedings is placed. *See Townsend v. Sain,* 372 U.S. 293, 319, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Thus, it is the State, rather than the habeas corpus petitioner, which is ordered to furnish relevant documents.

In the instant case, Judge Karwacki assumed that the alibi instruction given was erroneous. That assumption would seem to be eminently reasonable, since Graham's trial took place well before the changes wrought by *Mullaney v. Wilbur, supra. See State v. Grady,* 276 Md. at 181–182, 345 A.2d at 438–439. As with the standard Maryland instruction on the burden of proof in murder cases, the law with regard to alibi instructions was apparently well settled and unquestioned. *Evans v. State,* 28 Md.App. at 650, 349 A.2d at 309. The Court of Appeals in *State v. Grady, supra,* observed that the language found offensive in that case had been taken almost *verbatim* from a 1954 case involving the alibi defense and that the Court of Special Appeals had only recently, in 1974, given a non-offensive reading to that case. 276 Md. at 182–184, 345 A.2d at 438–439.

The State of Maryland has in this case assumed that an alibi instruction erroneously placing the burden of proof on petitioner was given. While this is certainly not a finding of fact entitled to conclusive weight, *see Townsend v. Sain, supra,* I conclude that this Court properly may rely on the assumption that an erroneous alibi instruction was given.

This is not a case in which any error in instructions could be harmless on the basis that no evidence supporting such an instruction was brought forth in the case. "Erroneous instructions on non-issues are self-evidently immaterial." *Evans v. State,* 28 Md.App. at 669, 349 A.2d at 320. Petitioner obviously relied on an alibi defense. He continuously sought to negate his presence at the decedent's murder, testifying that he was out of town for a lengthy period. (Tr. 246–270). Accordingly, the defense of alibi, and any instructions given thereon, were viable issues in petitioner's trial.

## V. APPLICABLE LAW

The point of departure, then, is that an alibi instruction was given at trial which offended the principles of *Mullaney v. Wilbur, supra.*

In a more recent case, the Supreme Court further explicated its holding in *Mullaney v. Wilbur.* In *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Court held that a state may, consistent with due process principles, redefine its criminal statutes in such a manner that certain aspects of proof are characterized as affirmative defenses, the burden of proof of which is placed upon the criminal defendant. In *Patterson,* the defendant was required to prove, by a preponderance of the evidence, the defense of "extreme emotional disturbance." While the Court observed that this "affirmative defense" was "a substantially expanded version of the older heat-of-passion concept,"[3] 432 U.S. at 207, 97 S.Ct. at 2325, the fact that the crime was defined in such a manner that the *defense* was not the negative of an *element* of the crime led the Court to conclude that the state had not been relieved of its burden of proof on any matter required to justify conviction.

 It is unnecessary to consider this case in light of the "affirmative defense"

---

**3.** The placing of a burden to show heat of passion on the defendant so as to reduce the degree of felonious homicide to manslaughter

was held to be violative of due process in *Mullaney v. Wilbur, supra.*

analysis of *Patterson v. New York, supra.* The state has determined that alibi is not an affirmative defense, inasmuch as that defense goes to criminal agency. *State v. Grady,* 276 Md. at 184–185, 345 A.2d at 439–440. Of course, criminal agency is always a part of the prosecution's burden of proof. *Cf. Patterson v. New York, supra,* 432 U.S. at 210, 97 S.Ct. 2319.

## VI. HARMLESS ERROR

Numerous courts applying the rationale of *Mullaney v. Wilbur, supra,* have determined that an erroneous instruction may be held to be harmless error under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See, e. g., Street v. Warden, Maryland Penitentiary,* 423 F.Supp. 611 (D.Md.), aff'd, No. 76–2064 (4th Cir. Dec. 3, 1976)[4], *cert. denied,* 431 U.S. 906, 97 S.Ct. 1700, 52 L.Ed.2d 390 (1977); *Wilkins v. Maryland,* 402 F.Supp. 76 (D.Md. 1975), aff'd, No. 75–2252 (4th Cir. June 25, 1976)[5], *cert. denied,* 429 U.S. 1044, 97 S.Ct. 747, 50 L.Ed.2d 757 (1977); *Brown v. State, supra.*

In the instant case, I conclude that the harmless error doctrine is inapplicable to erroneous instructions on the burden of proof with regard to an alibi defense.

The rationale behind the application of the doctrine is that, in crimes such as first degree murder, an erroneous instruction is rendered harmless because a finding of first degree murder necessarily negates, beyond a reasonable doubt, the existence of the mitigating factor with which the defense was improperly burdened. *Wilkins v. Maryland, supra* at 78–80.

In this case, the erroneously placed burden goes, as previously noted, to the criminal agency of the defendant. No matter how characterized, an erroneous allocation of the burden to prove an alibi puts a criminal defendant to the proof of his innocence. In fact, the defendant is placed in the anomalous position of being in a better situation strategically if he puts on *no* evidence of his whereabouts at the time of the crime, rather than testify that he was in another location at the time of the crime. If he attempts to cast off the mantle of guilt, the state has *less* of a burden.

Research discloses *no* reported case in which an erroneous instruction on the burden of proof on alibi was given (that issue being fairly in the case) in which harmless error has been found, no matter what the crime ultimately found to have been committed. The cases are uniformly to the opposite effect. *United States v. Alston,* 179 U.S.App.D.C. 129, 551 F.2d 315 (1976) (armed robbery); *Smith v. Smith,* 454 F.2d 572 (5th Cir. 1971), *cert. denied,* 409 U.S. 885, 93 S.Ct. 99, 34 L.Ed.2d 141 (1972) (burglary); *Stump v. Bennett,* 398 F.2d 111 (8th Cir.) (second degree murder), *cert. denied,* 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968); *Wright v. Smith,* 434 F.Supp. 339 (W.D.N.Y.1977) (first degree robbery); *State v. Grady, supra; Goode v. Director, Patuxent Institution,* No. B–75–877 (D.Md. Dec. 21, 1976) (first degree murder, etc.). *See Poole v. Georgia,* 551 F.2d 683 (5th Cir. 1977) (per curiam); *Bassett v. Smith,* 464 F.2d 347 (5th Cir. 1972), *cert. denied,* 410 U.S. 991, 93 S.Ct. 1509, 36 L.Ed.2d 190 (1973). Accordingly, based on the foregoing authorities and analysis, I conclude that the harmless error doctrine is inapplicable to the instant case, and that petitioner was unconstitutionally required to prove his defense of alibi at trial.

## VI. CONCLUSION

For the reasons stated, it is recommended that the petition of Paul McAndrew Graham for a writ of habeas corpus be granted and that petitioner be released from custody to the extent that he is held pursuant to the judgment attacked; provided, that the state may elect to retry petitioner within such time as the Court sets.

---

**4.** Unreported table affirmance at 549 F.2d 799.

**5.** Unreported table affirmance at 538 F.2d 327.