**Robert Ray ROBERTSON**

v.

**WARDEN, MARYLAND PENITENTIARY, COLLINS.**

**Civ. No. Y–78–1544.**

United States District Court, D. Maryland.

Feb. 22, 1979.

Robert Ray Robertson, pro se.

Alice G. Pinderhughes, Asst. Atty. Gen., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

Petitioner, Robert Ray Robertson, was convicted of first degree murder in the Criminal Court of Baltimore on April 21, 1971 and sentenced to death. The transcript of petitioner's trial indicates that he was arrested and subsequently convicted of the murder of Charles Redd who was found by a police officer lying in an alley with two bullet wounds in the head on July 5, 1970. The apparent motive for the murder was to prevent Redd from testifying against petitioner's friend, Hercules Williams, who had a murder charge pending against him. On December 4, 1972, the Court of Appeals vacated his death sentence, and he began serving a life sentence in the custody of the Division of Correction on December 28, 1972. Five months later, Governor Marvin

Mandel commuted petitioner's life sentence to a term of sixty years. In an unreported per curiam opinion, *Robertson v. State,* No. 803, September Term, 1972, filed on August 22, 1973, the judgment of the Criminal Court of Baltimore was affirmed by the Court of Special Appeals.

Petitioner commenced a collateral attack on his conviction by filing a petition under the Maryland Uniform Post Conviction Procedure Act on November 9, 1977 in which he claimed that the trial judge delivered an erroneous alibi instruction to the jury. The effect of this instruction was to shift to him an improper burden of proof at the trial. Judge Hargrove in the Criminal Court of Baltimore denied the petition on April 20, 1978. In an unreported per curiam opinion filed on June 29, 1978, the Maryland Court of Special Appeals also denied petitioner relief, holding that his failure to raise the issue of improper burden of proof on direct appeal constituted a waiver of the issue. Petitioner then filed the present petition for a writ of habeas corpus with this Court, alleging that the improper alibi instruction placed him under an undue burden at trial so as to deny him equal protection of the law.

The alibi instruction to which petitioner now objects reads as follows:

In connection with the alibi—that is to say, evidence that Mr. Robertson was somewhere else other than in the 1300 block of Webb Street on the evening of July 5th, 1970—the defendant has the burden of proof establishing that alibi by a preponderance of evidence; that is, by evidence persuading you that it is more probably true than not true.

Although the State has the burden of proving beyond a reasonable doubt his guilt in the case, he has the burden of persuading you by a preponderance of the evidence that he was somewhere else other than the 1300 block of Webb Street at the time described in the evidence.

Trial Transcript at 1950. Neither petitioner nor his counsel objected to this instruction at trial or in the subsequent appeal. The specific issue raised by petitioner's attempt to secure habeas corpus relief now is whether the Court of Special Appeals erred in denying him relief on the grounds that he did not raise the "alibi" issue until 1977 and therefore waived it. As the State poses the issue, the ultimate question is whether an erroneous jury instruction in 1971 can be the basis for relief seven years later?

■ One of the seminal features of American jurisprudence is that a criminal defendant is presumed innocent until proven guilty, with the burden of proof resting squarely on the shoulders of the prosecution:

[W]here one party has at stake an interest of transcending value—as a criminal defendant his liberty—th[e] margin of error is reduced as to him by the process of placing on the [prosecution] the burden . . . of persuading the factfinder at the conclusion of the trial . . . . .

*Speiser v. Randall,* 357 U.S. 513, 525–26, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). Although an alibi defense is certainly not an affirmative defense, *State v. Grady,* 276 Md. 178, 345 A.2d 436 (1975), once raised, such a defense may make more difficult the prosecution's overall burden of persuasion. On the other hand, by raising an alibi defense, a defendant simply presents evidence in connection with his general defense and does not assume an added burden of having to prove the critical fact in dispute.

Petitioner challenges an alibi instruction which, although frequently used at the time of his trial, has since been rejected by both state and federal courts. The initial trend which eventually led to a rejection on constitutional due process grounds of the alibi instruction used in petitioner's case began *before* petitioner's trial. In *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Supreme Court held that under the Fourteenth Amendment's due process clause, a state criminal defendant was protected against conviction without proof beyond a reasonable doubt of every element of the crime for which he is charged. In *Winship,* the specific matter before the Court was "whether proof beyond a reason-

able doubt [was] among the 'essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." *Id.* at 359, 90 S.Ct. at 1070. Given *Winship's* limited holding, its significance as applied to an erroneous alibi instruction was not immediately apparent, especially to a criminal defendant.

The Supreme Court's ruling in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), which came after petitioner's trial and his appeal, extended the *Winship* rationale by interpreting the Fourteenth Amendment's due process clause as requiring the "prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U.S. at 704, 95 S.Ct. at 1892. The impact of *Mullaney,* then, was applicable to any defense theory of justification, excuse or mitigation, and effectively prevented the shifting of the burden of persuasion from the prosecution to the defense. *See State v. Evans,* 278 Md. 197, 207, 362 A.2d 629, 635 (1976). *Winship* had been made fully retroactive by *Ivan V. v. City of New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1973), and on this authority, the Maryland Court of Special Appeals held that *Mullaney* was to be given fully retroactive effect. *Evans v. State,* 28 Md.App. 640, 349 A.2d 300 (1975), *aff'd, State v. Evans, supra.* The Supreme Court has likewise held *Mullaney* fully retroactive in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), emphasizing the importance of its holding to enhancing the fact-finding process.

In presenting his claims for habeas relief, petitioner invokes article 27, § 645A(d) of the Maryland Annotated Code, which reads as follows:

(d) *Decision that Constitution imposes standard not theretofore recognized.*

For the purposes of this subtitle and notwithstanding any other provision hereof, no allegation of error shall be deemed to have been finally litigated or waived where, subsequent to any decision upon the merits thereof or subsequent to any proceeding in which said allegation otherwise may have been waived, any court whose decisions are binding upon the lower courts of this State holds that the Constitution of the United States or of Maryland imposes upon State criminal proceedings a procedural or substantive standard not theretofore recognized, which such standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence.

While premising his relief upon the waiver standard of § 645A(d), petitioner relies upon the ruling in *State v. Grady,* 276 Md. 178, 345 A.2d 436 (1975), which he argues has retroactive effect. In *Grady,* the Court of Appeals specifically considered an erroneous alibi instruction and held that:

In sum, under the Federal Constitution, as well as the law of Maryland, the burden is on the State to prove all elements of the alleged crime and to do so beyond a reasonable doubt; hence, the defendant does not have to establish his alibi, not even by a minimal standard of proof. "Evidence of alibi should come into a case like any other evidence and must be submitted to the jury for consideration of whether the evidence as a whole on the issue of presence proves the defendant's guilt beyond a reasonable doubt." *Smith v. Smith,* 454 F.2d 572, 578 (5th Cir. 1971), *cert. denied,* 409 U.S. 885, 93 S.Ct. 99, 34 L.Ed.2d 141 (1972).

276 Md. at 182, 345 A.2d at 438. Petitioner argues, in effect, that *Grady* created "new" law by overruling existing Maryland law on the alibi defense. The State has rejected this contention, arguing instead that *Grady* did not create "new" law and that Judge Miller's decision in *Graham v. State,* 454 F.Supp. 643 (D.Md.1978), which made *Grady* retroactive should be reconsidered by this Court.

■ The State takes the position, relying in part on Judge Morton's ruling in *Davis v. State,* 40 Md.App. 467, 391 A.2d 872 (1978), that *Grady* cannot be applied retroactively

since there was no new law regarding the alibi defense. The State then concluded that *Mullaney* and *Winship* did not establish any new constitutional standard that could have been anticipated. This reasoning is clearly a misreading of the *Mullaney* and *Winship* holdings. As explained above, the full impact of *Winship* and *Mullaney*, including their retroactive application, took several years to become fully apparent, especially as applied to the specific context of erroneous alibi instructions. *Mullaney* was decided *after* petitioner's trial and his appeal, and while *Winship* came just one year before his trial, it is unrealistic to have expected someone in petitioner's situation to have fully appreciated the significance of this new constitutional requirement. As the court said in *Graham v. State,* 454 F.Supp. 643, 648 (D.Md.1978),[1] "[a]n indigent prisoner simply cannot reasonably be expected to fathom these matters so that his failure to raise a contention based thereon, shortly after the expositive case is decided, can be considered to be indicative of knowledge." Petitioner could not have fully appreciated the significance of *Winship,* nor, obviously, could he have anticipated either *Mullaney* or *Henderson* which made *Mullaney* fully retroactive.[2] Consequently, pursuant to the provisions of Maryland Code Annotated, article 27, § 645A(d), petitioner did not waive his right to raise an erroneous alibi instruction at this time by having failed to do so in his 1973 appeal.

Having concluded that petitioner has not waived the alibi issue, this Court finds nonetheless that habeas corpus relief is una-vailable for the claims raised in this case. In recent years, the scope of habeas relief has been substantially reduced from the "deliberate bypass" or "knowing waiver" standard established by dicta in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In *Fay,* Justice Brennan expanded the scope of habeas review by holding that "the federal habeas judge *may* in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in doing so has forfeited his state court remedies." 372 U.S. at 438, 83 S.Ct. at 849. (Emphasis added.) Having erected this "deliberate bypass" standard as a basis for denying federal habeas relief, Justice Brennan in effect threw open the doors of habeas review since a judge was not required absolutely to deny relief (he "may" do so). What this meant was that a state court's finding of a waiver, absent deliberate choice on a defendant's part, would not necessarily provide an adequate and independent state ground insulating the result from federal habeas corpus review.[3]

In recent years, the Supreme Court has drastically reduced the scope of habeas review allowed by *Fay.* In *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), and *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), the Court proposed that questions of waiver be approached in terms of a "cause" and "prejudice" standard which should not be defined as broadly as a "knowing and deliberate waiver." *Wain-*

---

1. The *Graham* decision was written by Clarence E. Goetz, Magistrate, and the District Court, James R. Miller, J., adopted its recommendation in all respects.

2. One commentator has recently noted with respect to *Mullaney* that when it was rendered, "it did not have the earmarks of being a monumental decision. It was short, unanimous, and stated with no suggestion of the things to come. Within two years, however, courts and commentators strongly disagreed about the correct interpretation of *Mullaney,* and *Mullaney* was thus applied inconsistently." Note, *Patterson v. New York, Criminal Procedure— The Burden of Proof and Affirmative Defenses,* 9 TOLEDO L.REV. 524, 542–43 (1978).

3. In *Wallace v. McKenzie,* 449 F.Supp. 802, 806 (S.D.W.Va.1978), the court remarked that:

There are obvious inequities in applying a waiver rule to situations where the constitutional right has not yet been articulated by the Supreme Court, however, that Court has clearly evidenced its intent to defer in certain instances to state procedural rules which constitute an adequate and independent ground for decision, thereby precluding review of federal claims in habeas proceedings. See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

*wright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 *reh. denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977). "Cause" essentially asks whether a petitioner's reason for failing to challenge a given procedure at the time now justifies relief. Absent sufficient "cause," then, failure to object will bar subsequent habeas relief. "Prejudice" asks whether the challenged portions of the state proceedings had any effect on the determination of petitioner's ultimate guilt or innocence.[4]

The Court applied the cause and prejudice standard in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, *reh. denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977), to find that respondent's failure to make a timely objection under Florida's contemporaneous-objection rule to the admission of his inculpatory statements, absent a showing of cause for noncompliance and some showing of actual prejudice, bars federal habeas review of his *Miranda* claim. 433 U.S. at 86–88, 97 S.Ct. 2497. Retreating from *Fay,* the Court explicitly adopted an approach which would "review" the ability of the states to rely on the adequate and independent state grounds doctrine so as to reduce the occasions on which federal courts will be called on *de novo* to pass upon the validity of objections not raised in the state proceeding:

> Under the rule of *Fay v. Noia,* supra, state appellate courts know that a federal constitutional issue raised for the first time in the proceeding before them may well be decided in any event by a federal *habeas* tribunal. Thus their choice is between addressing the issue notwithstanding the petitioner's failure to timely object, or else face the prospect that the federal habeas court will decide the question without the benefit of their views. *Id.* at 89–90, 97 S.Ct. at 2508. The *Wainwright* Court further added that its encouragement of relying on state procedural rules absent cause and prejudice was a means of encouraging full and final litigation of *all* the issues in one trial so as to minimize the unnecessary expense of future relitigation:

> The failure of the federal habeas courts generally to require compliance with a contemporaneous objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event. A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the court room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous objection rule surely falls within this classification.

> We believe the adoption of the *Francis* rule in this situation will have the salutary effect of making the state trial on the merits the "main event," so to speak,

4. The *Graham* court defined the terms as follows:

> "cause" . . . means a reasonable and valid explanation other than a tactical decision to forego the available avenue of redress. As to "prejudice" some actual and substantial detriment, bearing on the fairness of the trial, must be shown.

454 F.Supp. at 648. Another court has considered "prejudice" in the following terms:

> One possible interpretation of "prejudice" could require the petitioner simply to show that the suppressible evidence could have

contributed to the jury verdict, thus incorporating the harmless error standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Francis v. Henderson,* 425 U.S. [536,] at 557, 96 S.Ct. 1708, [48 L.Ed.2d 149] (Brennan, J., dissenting).

*United States v. Underwood,* 440 F.Supp. 499, 503 (D.R.I.1977). Other courts have recognized that the meaning of "cause" and "prejudice" is "cryptic" and that the Supreme Court has left its precise content to future case development. *Cole v. Stevenson,* 447 F.Supp. 1268, 1271 (E.D.N.C.1978).

rather than a tryout on the road for what will later be the determinative federal habeas hearing. There is nothing in the Constitution or in the language of § 2254 which requires that the state trial on the issue of guilt or innocence be devoted largely to the testimony of fact witnesses directed to the elements of the state crime, while only later will there occur in a federal habeas hearing a full airing of the federal constitutional claims which were not raised in the state proceedings. If a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection.

*Id.* at 90, 97 S.Ct. at 2508.

■ In light of this Court's findings, *supra,* that petitioner had not waived his erroneous alibi instruction claim by failing to raise it in his appeal, it is apparent that he has made a showing of "cause" as to why he should be entitled to raise it now in a collateral attack on his conviction. The full implication of *Winship* was not and could not have been apparent either to him or to his counsel at the time of his trial. *Evans, supra,* which interpreted *Mullaney* and gave retroactive effect to *Grady,* was not decided until 1975. Since petitioner was unaware of the availability of the issue, adequate "cause" has been demonstrated. *Graham, supra,* 454 F.Supp. at 649.

The success of petitioner's collateral attack, however, founders upon the requirement that he also make a showing of *actual* prejudice.[5] Having found cause in *Graham,* the district court also found prejudice simply because of the shift to petitioner of the burden of proving his alibi defense:

> The question of prejudice to petitioner's trial requires no extended discussion in this case. If, indeed, petitioner was given the burden of proving his alibi defense, prejudice is patent. It hardly needs to be repeated that it is inconsistent with the Constitution and our system of criminal justice to place the burden on a defendant to prove his innocence. An erroneous instruction on the burden of proving an alibi would do precisely that.

454 F.Supp. at 649. While this passage explains the impact upon a defendant of having to prove an alibi defense, in terms of satisfying the "prejudice" test, it fails to inquire, other than abstractly, as to whether there was *actual* prejudice upon petitioner.[6] Although the Supreme Court has not yet provided lower federal courts with detailed guidelines for implementing the

---

**5.** *See* the holding in *Ramsey v. United States,* 448 F.Supp. 1264, 1273 (N.D.Ill.1978), indicating that a failure to make a showing of cause precludes the need for the court to consider whether there was actual prejudice.

**6.** Applying *Wainright,* the court in *Ramsey v. United States,* 448 F.Supp. 1264, 1273 (N.D.Ill. 1978), rejected the notion that "inherent prejudice" could satisfy *Wainwright's* "actual prejudice" standard:

> Even assuming, however, that the court must make a finding with regard to prejudice, petitioner has failed to make a showing of actual prejudice. Petitioner merely argues that prejudice is inherent in any situation where a prosecutor comments on the failure of a defendant to testify at his criminal trial. Such an assumption, however, does not constitute a sufficient showing of prejudice. In *Wainwright v. Sykes,* 528 F.2d 522 (5th Cir. 1976), *rev'd, Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Fifth Circuit found that prejudice is "inherent" in a situation where the admissibility of an incriminating statement is concerned. Al-

though it did not give precise content to the term prejudice, the Supreme Court clearly rejected the "inherent prejudice" approach in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). This court must likewise reject petitioner's "inherent prejudice" approach. Moreover, even if the prosecutor did comment on Ramsey's failure to testify, the evidence of guilt presented at trial was substantial to a degree that would negate any possibility of actual prejudice resulting to Ramsey. *Id.* at 91, 97 S.Ct. 2497. This Court concurs with the *Ramsey* court's reading of *Wainwright.* Moreover, as will be explained in detail *infra,* such a reading which requires an assessment of the evidence establishing petitioner's guilt or innocence is entirely consistent with the Supreme Court's recent jurisprudential developments in this area. *See, e. g.,* the discussion and sources in note 7, *infra. See also Cameron v. Hect,* 449 F.Supp. 189, 192 (E.D.N.Y.1978) ("prejudice" seems to invite some examination of the merits of the claim presented).

In *Gale v. Harris,* 450 F.Supp. 375, 378 (S.D.N. Y.), *rev'd on other grounds,* 580 F.2d 52, 53 n.1

cause and prejudice standard, *Wainwright's* failure to find prejudice followed from an evaluation of the evidence of guilt presented at trial: "The other evidence of guilt presented at trial, moreover, was substantial to a degree that would negate any possibility of actual prejudice resulting to the respondent from the admission of his inculpatory statement." *Id.* 433 U.S. at 91, 97 S.Ct. at 2509. The rationale provided in *Wainwright* culminates a series of cases in recent years which have narrowed the scope of collateral attack through habeas corpus in light of the view that federal habeas corpus is intended to protect the innocent from unconstitutional incarceration rather than provide the guilty with a seemingly endless number of opportunities to relitigate their cases.[7] The current scope of habeas corpus relief, then, is directed princi-

(2nd Cir. 1978) the state, in a manner similar to the instant case, agreed that the alleged error in limiting cross-examination must be considered harmless as to petitioner. Judge Duffy adopted an approach which evaluated the cumulative evidence in light of a constitutional harmless error standard not contained in *Wainwright*:

> The State finally argues that any error in limiting the cross-examination of Cunningham must be considered harmless with respect to the instant petitioner. However, despite the fact that three witnesses to the crime identified Gale and that physical evidence linked Gale to the crime, I cannot say that the cumulative evidence against him makes this constitutional error harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966). The error complained of herein affected substantial rights of the petitioner and gave rise to a "reasonable possibility that the [error] might have contributed to the conviction," *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). It is certainly not clear to me beyond a reasonable doubt that a jury who heard Cunningham's prior statement would have nonetheless convicted petitioner Gale.

While the " 'prejudice' inquiry . . . appears to bear a strong resemblance to harmless-error doctrine," *Wainwright, supra,* 433 U.S. at 117, 97 S.Ct. at 2522 (Brennan, J., dissenting), it would appear that the *Wainwright* majority, with its emphasis on the defendant's factual guilt, had something else in mind. Even Justice Brennan, dissenting in *Francis,* recognizes that a showing of actual prejudice is not so readily made out. *See* discussion at note 10, *infra.* The use of the *Chapman* test, with its reliance on "reasonable possibility," too closely resembles the inherent prejudice standard which *Wainwright* apparently rejects. The *Chapman* test would evaluate whether the error affected the judgment. The *Wainwright* Court's actual prejudice standard, however, inquires whether there is substantial evidence to support the judgment. The latter test, unlike that used in *Chapman,* would permit habeas review in this case if petitioner could present evidence tending to support his innocence. *See generally* R. TRAYNOR, THE RIDDLE OF HARMLESS ERROR 26–28 (1970). Accordingly, this Court declines to modify the actual prejudice test by incorporating into it the harmless error doctrine.

7. *See, e. g., Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *Schneckloth v. Bustamonte,* 412 U.S. 218, 250, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); and *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 *reh. denied,* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976). Mr. Justice Powell concluded in *Stone* that:

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

428 U.S. at 494–95, 96 S.Ct. at 3052–53 (footnotes omitted). His discussion explicitly recognized that certain costs were involved in relitigating Fourth Amendment claims through the vehicle of collateral attack, and he explained that his views were premised on his belief that the "ultimate question" to be focused on should be the defendant's guilt or innocence:

> The costs of applying the exclusionary rule even at trial and on direct review are well known: the focus of the trial, and the attention of the participants therein, are diverted from the ultimate question of guilt or innocence that should be the central concern in a criminal proceeding. Moreover, the physical evidence sought to be excluded is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant. . . . Application of the rule thus deflects the truthfinding process and often frees the guilty.

428 U.S. at 489–90, 96 S.Ct. at 3050 (footnotes omitted). Additionally, three years earlier in *Schneckloth,* Justice Powell had expressed similar views on the relationship between habeas

pally at preserving the integrity of the guilt-determining process. As Judge Friendly said several years ago,

The dimensions of the problem of collateral attack today are a consequence of two developments. One has been the Supreme Court's imposition of the rules of the fourth, fifth, sixth and eighth amendments concerning unreasonable searches and seizures, double jeopardy, speedy trial, compulsory self-incrimination, jury trial in criminal cases, confrontation of adverse witnesses, assistance of counsel, and cruel and unusual punishments, upon state criminal trials. The other has been a tendency to read these provisions with ever increasing breadth. The Bill of Rights, as I warned in 1965, has become a detailed Code of Criminal Procedure, to which a new chapter is added every year. The result of these two developments has been a vast expansion of the claims of error in criminal cases for which a resourceful defense lawyer can find a constitutional basis.

Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.CHI.L.REV. 142, 155–56 (1970) (footnotes omitted). Judge Friendly would permit habeas corpus relief for review of those constitutional claims alleging substantive violations of a prisoner's rights as opposed to procedurally based constitutional claims such as a police officer's mistake as to probable cause.[8] Habeas review of the latter, he argues, should only occur where a petitioner can make "a colorable claim of innocence." *Id.* at 142.

■ The prejudice standard adopted in *Davis, Francis,* and now *Wainwright* seems to embody precisely the limited habeas review which Judge Friendly had in mind, and the ultimate result is that the scope of habeas relief is narrowed to protect those constitutional rights having a direct bearing on a petitioner's innocence in order to prevent the miscarriage of justice which results from convicting an innocent person.[9] In the present case, operation of the "preju-

review and a petitioner's innocence: "Recent decisions . . . have tended to depreciate the importance of the finality of prior judgments in criminal cases. *Kaufman* [*v. United States*], 394 U.S. [217], at 228, [89 S.Ct. 1068, 22 L.Ed.2d 227] [(1969)]; *Sanders v. United States,* 373 U.S. 1, 8, [83 S.Ct. 1068, 10 L.Ed.2d 148] (1963); *Fay* [*v. Noia,* 372 U.S. 391], at 424, [83 S.Ct. 822, 9 L.Ed.2d 837] [(1963)]. . . . Habeas corpus indeed should provide the added assurance for a free society that no innocent man suffers an unconstitutional loss of liberty." 412 U.S. at 256, 93 S.Ct. at 2062–63 (Powell, J., concurring) (emphasis in original). He further argued that the "central reason for habeas corpus [was] the affording of means . . . of redressing an *unjust* incarceration." *Id.* at 257–58, 93 S.Ct. at 2063 (emphasis in original).

8. Judge Friendly identifies four areas where collateral attack is justified regardless of any question of innocence: (1) cases where the criminal process has broken down or where the defendant has not had the type of trial guaranteed by the Constitution, *e. g., Moore v. Dempsey,* 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923); *Brown v. Allen* and *Speller v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); (2) cases "where a denial of constitutional rights is claimed on the basis of facts which 'are *dehors* the record and their effect on the judgment was not open to consideration and review on appeal,' " *Waley v. Johnston,* 316 U.S. 101, 104–05, 62 S.Ct. 964, 86 L.Ed. 1302 (1942) (coerced guilty plea); (3) cases "where

the state has failed to provide a proper procedure for making a defense at trial and on appeal," *e. g., Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); and (4) cases involving new constitutional developments relating to criminal procedure. 38 U.CHI.L.REV. at 151–53.

In those cases where innocence *is* relevant, Judge Friendly explains its relevance as follows:

Perhaps as good a formulation of the criterion as any is that the petitioner for collateral attack must show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

*Id.* at 160 (footnotes omitted).

9. One indication of Judge Friendly's influence on the Court may be found in the fact that the leading opinions which have narrowed the scope of habeas review since *Fay* have explicitly cited his views. *See, e. g., Schneckloth, supra,* 412 U.S. at 258, n. 12, 93 S.Ct. 2041 (Powell, J., concurring); *Stone, supra,* 428 U.S. at 480, n.13, 96 S.Ct. 3037 (majority opinion); and *Wainwright, supra,* 433 U.S. at 78, n.6, 97 S.Ct. 2497 (majority opinion).

dice" standard bars habeas relief because although the trial court delivered an erroneous alibi instruction, there is no indication in light of the evidence amassed at trial that this specific instruction was a determining factor in the jury's verdict.[10] The substantial evidence as to petitioner's guilt serves to negate the possibility of any actual prejudice from the erroneous alibi instruction. 433 U.S. at 91, 97 S.Ct. 2497.[11]

10. Dissenting in *Francis,* Justice Brennan stated that a showing of actual prejudice would be almost impossible to achieve:

> One suspects that a habeas petitioner will never be able to demonstrate "actual" prejudice, if the Court intends by that to mean he must prove, by some standard, *that he would not in fact* have been indicted for a particular crime had the grand jury met constitutional standards.

425 U.S. at 557, 96 S.Ct. at 1719 (emphasis in original). No doubt this result was precisely what the majority intended, and more recent cases have shown the Court increasingly concerned with matters of judicial efficiency, economy, and preventing the guilty from escaping punishment or obtaining new trials on apparent technicalities when the evidence points undoubtedly to their guilt. *See, e. g.,* the sources cited in note 7, *supra. See also Brewer v. Williams,* 430 U.S. 387, 415–16, 97 S.Ct. 1232, 51 L.Ed.2d 424. (Burger, C. J., dissenting) *reh. denied,* 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977).

11. Although dealing with a different subject, the Supreme Court's recent ruling in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), provides analogous support for the position developed in this opinion. The *Patterson* Court considered whether New York's practice of placing on the defendant the burden of persuasion as to the affirmative defense of extreme emotional disturbance violated the "reasonable doubt rule" of the Fourteenth Amendment's due process clause. Holding that it did not, the Court distinguished *Mullaney* on the basis that the affirmative defense in *Patterson* was not technically included in the statutory definition of the offense: "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." 432 U.S. at 210, 97 S.Ct. at 2327. The Court made it evident, however, that the requirement was limited, since the reasonable doubt rule does not extend to "every fact . . . which [the state] is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." *Id.* at 207, 97 S.Ct. at 2325. In *Winship,* the reasonable doubt rule was given much broader scope, applying to "every fact necessary to constitute the crime with which [the accused] is charged." 397 U.S. at 364, 90 S.Ct. at 1073. Taken together, *Winship* and *Mullaney* implied that the reasonable doubt rule would apply to several trial-related issues, such as the burden of proof in cases involving an alibi defense. *Patterson's* more formalistic approach reads *Mullaney* as requiring that "a state must prove *every ingredient of an offense* beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." 432 U.S. at 215, 97 S.Ct. at 2330 (emphasis added). While the continued vitality of *Mullaney* is uncertain in light of *Patterson,* especially in the context of an alibi defense which is different from the statutory elements of an offense, the ruling does suggest that the Court is increasingly willing to defer to a state's definition of the elements of a criminal offense, leaving to a defendant the burden of proving other defenses raised. The reasonable doubt rule, then, applies only to the ingredients of an offense, with the ultimate impact being that a criminal defendant may have to shoulder the burden for any affirmative defenses. This entire development parallels the habeas process described above whereby federal courts must defer to state court determinations based on adequate and independent state procedural grounds absent "cause" and "actual prejudice." In the *Patterson* context, however, the federal deference is toward the state's statutory definition of the offense which, depending on its inclusiveness, may increase or decrease the burden of persuasion which can now be placed upon a criminal defendant. As with "actual prejudice" discussed above, the *Patterson* Court made it certain that its overall approach was tempered by concern for a criminal defendant's guilt:

> The requirement of proof beyond a reasonable doubt in a criminal case is "bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." *Winship,* 397 U.S., at 372, [90 S.Ct. 1068] (Harlan, J., concurring). The social cost of placing the burden on the prosecution to prove guilt beyond a reasonable doubt is thus an increased risk that the guilty will go free. While it is clear that our society has willingly chosen to bear a substantial burden in order to protect the innocent, it is equally clear that the risk it must bear is not without limits; and Mr. Justice Harlan's aphorism provides little guidance for determining what those limits are. Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person. Punishment

Reviewing the testimony at trial, there is more than enough evidence to sustain petitioner's conviction of murder in the first degree and to negate the likelihood of any actual prejudice from the erroneous instruction. Two witnesses present at the time of the shooting testified at trial that petitioner was the person who shot the victim, Charles Redd. *See* Testimony of Marian Moore and Willie Wills, Transcript at 242, 245 and 780. Otis Alton Smith testified to two conversations with petitioner. On December 28, 1970, petitioner informed Smith that a witness, John Frank Hunter, would not testify against him at trial. (Transcript at 363–64). Smith subsequently spoke with petitioner at the Baltimore City Jail where petitioner stated that the only way Hercules Williams could beat the murder charge would be if he (petitioner) would "off" or get rid of the witness. Transcript at 379–81. William Henry Johnson also testified that petitioner admitted that he "offed" the witnesses to help Williams. Transcript at 477–80.

John Frank Hunter, a defense witness, testified that he saw the man who shot the victim and that the individual was not petitioner. On cross-examination, however, Hunter admitted that he had twenty-two prior convictions and knew Hercules Williams. Transcript at 1144.

As to petitioner's alibi witnesses, one testified that prior to giving her testimony, both she and Williams had visited Robertson on at least one occasion. Transcript at 1295, 1297. Furthermore, three of the principal alibi witnesses were relatives of petitioner, and one of these three was found to have committed perjury during the course of her testimony. Transcript at 1793, 1796, compared with 1188.

In light of the weak testimony presented in petitioner's behalf at trial and the State's two eye witnesses who unequivocally, identified petitioner as the murderer, it would appear that petitioner is unable to satisfy

the "actual prejudice" test required by *Wainwright*. Having failed to raise even a colorable claim of innocence, petitioner is unable to show that he was prejudiced by the erroneous alibi instruction.

Accordingly, it is this 22nd day of February, 1979, by the United States District Court for the District of Maryland, ORDERED:

1. That the defendant's motion to dismiss be, and the same is, hereby GRANTED; and

2. That a copy of this Memorandum and Order be sent to the petitioner and to the Attorney General.

---

of those found guilty by a jury, for example, is not forbidden merely because there is a remote possibility in some instances that an innocent person might go to jail.

432 U.S. at 208, 97 S.Ct. at 2326. The holding in *Patterson* has recently been criticized in Note, *Affirmative Criminal Defenses—The Reasonable Doubt Rule in the Aftermath of Patterson v. New York*, 39 OHIO ST.L.J. 393 (1978).